STATE v. ED COX.

(Filed 23 November, 1910.)

1. **Murder—Deadly Weapon—Malice—Burden of Proof.**

   The admission that a homicide was committed by the prisoner with a pistol, a deadly weapon, implies malice and raises a presumption of murder in the second degree, casting upon the prisoner the burden throughout the trial of showing all matters in mitigation to reduce the crime to manslaughter or to prove self-defense.

2. **Murder—Self-defense—Repellant Force—Burden of Proof.**

   For self-defense the prisoner must prove that the force he used was exerted in good faith to prevent the threatened injury, and was not disproportionate to the force it was intended to repel, the question of excessive force and the real or apparent necessity for its use upon the facts presented being for the jury to determine.

3. **Same—Proving Attack—Cessation—Instructions.**

   When evidence is conflicting upon the plea of self-defense, it is correct for the trial judge to charge, in effect, that if the jury found that after the accused brought on the difficulty resulting in the death of the deceased he withdrew from the encounter or gave deceased reasonable grounds to believe that he had done so, and did not desire to continue the conflict, but the deceased pursued the accused with an open knife and continued to strike him with it, the accused could defend himself as if he had not originally provoked the fight, if the jury found he had provoked it; but that such withdrawal, if so found by them, must have been made in good faith and not as a cover of the deceased to draw the pistol with which the deadly wound was (as in this case, admittedly) inflicted.

4. **Evidence—Instructions—Contentions—Objections and Exceptions.**

   There was no error in this case made by the trial judge in fairly stating to the jury the various contentions of fact by the parties. He clearly stated they must not consider that he was intimating how the facts should be found by them, the finding of the facts being solely for them; and an omission to recapitulate the evidence favorable to a party is not assignable for error, if not pointed out at the time.

5. **Murder — Malice — Verdict — Objections and Exceptions, Immaterial.**

   Exceptions relating only to questions of malice, upon a trial for murder, become immaterial when the prisoner is convicted of murder in the second degree.

6. **Murder—Self-defense—Malice—Unnecessary Force—Evidence.**

When there is evidence tending to show that the prisoner several times fired upon the deceased, which resulted in death, a prayer for special instruction, based upon the theory that if the first shot fired was the fatal one, and in self-defense, the other shots had no bearing upon the guilt or innocence of the prisoner on the question of murder or manslaughter, is properly refused, the fact that the other shots were fired being competent as tending to show they were through malice and rage, in contradiction of the idea of self-defense.

7. **Murder—Repellant Force—Defense of Another—Son—Evidence.**

A son entering a fight to protect his father can justify his act in killing the father's assailant for his protection only to the same extent and under the same circumstances that would justify his father's acts in self-defense.

APPEAL by defendant from *Long, J.,* at the August Term, 1910, of MECKLENBURG.

*Attorney-General* and *George L. Jones* for the State.
*Osborne, Lucas I. Cocke* and *McCall & Smith* for defendant.

CLARK, C. J. The prisoner, Ed Cox, was convicted of manslaughter and sentenced to the State's prison for a term of five years. From this judgment he appeals. The evidence fills nearly 100 printed pages. Graphically, but not unfairly, the Attorney-General sets out in his brief what occurred, as follows: "It was on the ball ground that Mack Cox unfurled the flag of his clan. He flung the epithet 'Son of a_____,' into the teeth of Reece Hucks; but the Huckses, though doughty, are not ready warriors, and they refused to be goaded into battle. It was Charles Cox, father and patriarch of the clan that started the fight. He says he went into Holbrook's store, but when his eye rested on Bat Davis he at once maneuvered for battle. He saluted his enemy, but Bat kept silent. He next flung out an accusation that Bat had flung a dead dog into his yard, and Bat admitted the charge. Then, said Cox, 'I grabbed him.' Bat tried to get away, but Charles held fast, and Mack Cox struck Bat over the head with a stool while he and Ed. made proclamation that no man should interfere. Charles' own account of this engagement is terse and vigorous. 'Davis got one hand wrapped

around my head. He is a tall fellow; he got one of his fingers in my eye and I was holding him with my right hand, and I just reached up and caught his finger from out of my eye and stuck it in my mouth and just walked out. When we got out of the door I suppose we walked as far as the jury door, angling up the street, and then I threw that right foot out and threw him on his face and got on him and stuck my fingers in his eyes. He was hollering as hard as he could and some one stabbed me on the hip with something.'

"Gilreath Davis, of the Hucks faction, then came up, crying out, 'Come on, the boys are in it.' But Mack Cox intercepted him with a bottle and knocked him out of the door. Next Adrian Hucks came up and, in the language of Ed. Cox, 'Uncle Mack administered on him.' Meantime Ed. Cox, with his hand in his coat pocket on his pistol, was daring anybody to touch the parties, though Davis was crying aloud for mercy and Charles Cox was trying to dig out his eyes.

"The evidence for the State shows that Ed. Cox next approached Reece Hucks with his pistol in his hand, that he abused him, called him vile names, told him he had to get into the fight, and finally struck him. That the parties then clinched and Hucks backed up the street, backed twenty-five or fifty feet. That while the parties were backing Lester Hucks ran up behind and struck Ed. Cox. Cox then ducked and pulled back and this was the very first movement he ever made indicating any desire or willingness to quit the fight. He ducked and jerked away, and as soon as he was free from Hucks he pulled his pistol, advanced and fired. That at the first shot Reece Hucks exclaimed, 'He has killed me!' and fell and Cox deliberately fired two more shots into his prostrate body.

"Meantime Mack Cox had jerked Lester Hucks off, had thrown him into the street and the parties had clinched. When Ed. Cox had shot Reece Hucks three times he turned and fired twice at Lester Hucks, who was then engaged in battle with Mack Cox. Reece Hucks got to his feet, seized a chair and with it knocked Mack Cox down a time or two, and the fight was over."

He gives the casualties as follows:

"Reece Hucks, mortally wounded.

"Lester Hucks, knocked into a ditch by Mack Cox.

"Adrian Hucks, 'administered upon' by Mack Cox.

"Gilreath Davis, knocked out of a store with a bottle in the hands of Mack Cox.

"Bat Davis, knocked on the head with a stool, beaten up and his eyes gouged.

"Charles Cox, cut with a knife in the hip.

"Ed. Cox, badly cut up on the head, face and back.

"Mack Cox, shot in the arm by Ed. Cox, who was aiming at Lester Hucks, and subsequently knocked down two times with a chair in the hands of Reece Hucks."

The Attorney-General adds:

"Truly, there was beautiful fighting along the whole line, and if any member of the Cox clan showed any unwillingness to enter the fight, or, being in, any disposition to withdraw or retreat from the fight it is not written down in the history of the battle."

The prisoner testified among other things that he had taken three or four drinks, but was not drunk; that he did not know how many fights he had up till the time he killed Reece, but had had a good many; that he had a fight with Reece Hucks the Christmas before the killing; that he did not call it a fight, but a shooting match; that they shot at each other; that he could not deny that he had had eleven fights in two years; didn't think he had had any more than that; that on this day the Coxes were on one side and the Davises and Huckses on the other; there were seven of the Coxes, including their close kin; says he saw his father on Davis beating him; wasn't caring if he beat him; that he knew a man mean enough to kill his daddy's dog ought to have a beating; says that after "we had administered on Adrian, he said he wouldn't have anything more to do with it. He ran back in there. I got him out of range. When I got back Uncle Homer Cashion had Gilreath Davis. Bat was on the ground hollering. Reckon that was one I had fixed. Reckon Uncle Homer Cashion had fixed Gilreath Davis which made two."

153—41

This fight occurred at a Farmer's Union picnic at Huntersville 21 August, 1909, just after sundown, when all parties were pre-paring to go home. The evidence for the State all went to show that the prisoner provoked the deceased to fight and that the prisoner was the aggressor. The prisoner sought to show that the deceased was attempting to take part in the fight between Charles Cox and Bat Davis, and was intending to cut the prisoner's father, and that the deceased was the aggressor. The case was fairly left to the jury, who convicted the prisoner of manslaughter. The result of the fight was not altogether as disastrous as the classical one between the Clan Quhele and the Clan Chattan on the North Inch of Perth, but from the evidence all the parties engaged on this occasion fought as willingly.

Exception 1 of the prisoner cannot be sustained. The killing with a deadly weapon was admitted and this raised a presumption of murder in the second degree, and the burden was upon the prisoner to show all matters in mitigation either to reduce it to manslaughter or to prove killing in self-defense. *S. v. Fowler,* 151 N. C., 731; *S. v. Hagan,* 131 N. C., 802; *S. v. Brittain,* 89 N. C., 501. "This burden continues to rest upon him throughout the trial." *Walker, J.,* in *S. v. Capps,* 134 N. C., 627, where the subject is fully treated.

Exception 2. The court correctly charged that in order to make good the plea of self-defense the force used must be exerted in good faith to prevent the threatened injury, and must not be excessive or disproportionate to the force it is intended to repel, but the question of excessive force was to be determined by the jury. *S. v. Quick,* 150 N. C., 825; *S. v. Goode,* 130 N. C., 651; *S. v. Gooch,* 94 N. C., 987; Bish. New Cr. Law, sec. 893.

Exception 3 cannot be sustained. In *S. v. Blevins,* 138 N. C., 668, the Court said: "The necessity, real or apparent, for killing one's assailant to protect one's self is a question to be determined by the jury on the facts as they reasonably appeared to the one assailed."

Exception 4 is simply a repetition, in effect, of exception 1. The Court followed the authorities. In *S. v. Worley,* 141 N. C., 764, *Brown J.,* said: "The killing with a deadly weapon im-

plies malice, and where this is admitted or proved, the prisoner is guilty of murder in the second degree, and the burden of proof rests upon him to prove the facts upon which he relies for mitigation or excuse to the satisfaction of the jury," citing *S. v. Exum,* 138 N. C., 599; *S. v. Capps,* 134 N. C., 622; *S. v. Hicks,* 125 N. C., 636; *S. v. Booker,* 123 N. C., 713.

The prisoner seems to rely principally on Exception 5 to the charge because his Honor told the jury: "If, however, you find that the accused brought on the difficulty and he in good faith withdrew from it, and showed to the prisoner that he withdrew from it, or gave him reasonable grounds to believe that he had, and that he did not desire to continue the conflict, and you find that the deceased kept up and pursued the fight, and was striking the prisoner with an open knife, under such circumstances, if so found by you, from the evidence, the defendant had the right to defend himself as if he had not originally provoked the fight, if you find that he did provoke it; but his withdrawal, if you find that there was such withdrawal, must have been made in good faith; it must not have been as a cover for the purpose of drawing a pistol or to obtain an advantage and kill his adversary." This charge was a correct statement of the law and was justified by the evidence, and taken in connection with the 6, 7 and 8 special instructions which were given at the request of the prisoner was fully as favorable as he could ask.

In *S. v. Garland,* 138 N. C., 678, *Hoke, J.,* says: "It is the law of this State that where a man provokes a fight, by unlawfully assaulting another and in the progress of the fight kills his adversary, he will be guilty of manslaughter at least, though at the precise time of the homicide it was necessary for the original assailant to kill in order to save his own life. This is ordinarily true, where a man unlawfully and willingly enters into a mutual combat with another, and kills his adversary. In either case, in order to excuse the killing on the plea of self-defense, it is necessary for the accused to show that he quitted the combat before the mortal wound was given, and retreated or fled as far as he could with safety, and then, urged by mere necessity, killed his adversary for the preservation of his own life." To the same effect in *S. v. Medlin,* 126 N. C., 1127, where *Mr. Justice Douglas* carefully reviewed the authorities.

Exception 14 is covered by what is said in regard to exception 5. Exceptions 6-20, inclusive (excluding sec. 14), are to the statement of the contentions of the State and the prisoner by the court. Before stating these contentions his Honor, out of abundant caution, told the jury "when I call your attention as to how the prisoner insists that you should find the facts from the testimony of the witnesses and when I do the same for the State, I do not intimate to you how to find the facts, because the burden is upon you to find the facts from the evidence. I simply direct your attention to certain contentions they make as to how you shall find the facts, and those contentions are valuable to you if the evidence in the cause supports those contentions made by one side or the other." In this the court followed the usual practice, which is often useful to the jury and when fairly made, as here, cannot be prejudicial to either side. In *Clark v. R. R.,* 109 N. C., 431, it is said, "it is not error in the Court to recapitulate fairly such contentions of counsel as illustrate the bearing of evidence upon the issues. The omission to recapitulate evidence favorable to a party is not assignable for error, if not pointed out at the time." *S. v. Grady,* 83 N. C., 643; *S. v. Reynolds,* 87 N. C., 544.

Exceptions 20 and 21 relate only to the question of malice, and as the jury has found the prisoner guilty only of manslaughter, they have become immaterial.

Exception 22, which is the last, is to the refusal of the court to charge the jury, when requested: "If the jury believe the evidence the first shot fired was the fatal one, causing the death of the deceased. If you find said first shot was fired in proper self-defense the guilt or innocence of the prisoner on the charge of murder or manslaughter is not affected by his firing two other shots at the deceased after the fatal one." This prayer was properly refused.

The fact that the prisoner fired two shots into the body of the victim after he fell was evidence tending to show that he was acting through malice or rage, and not in defense of his life, and that he was disposed to use and did use unnecessary force. In *S. v. Quick,* 150 N. C., 825, *Brown, J.,* said: "There is evidence tending to prove that while the prisoner may have entered the

affray unwillingly and have fired at first in self-defense, yet he continued to fire as is contended, unnecessarily. The prisoner himself admits that he was the only person that shot the deceased, and that he fired four times at him. There are circumstances in evidence which surround the occurrence from which it may be fairly inferred that the prisoner's repeated firing was unnecessary, and possibly further wounded the deceased after the latter had ceased to fire, and was disabled. It is well settled that if the prisoner entered the fight in self-defense and without malice but used unnecessary force, which resulted in death, it is manslaughter, and the question of excessive force is peculiarly one for the jury."

In the oral argument here the prisoner's counsel earnestly contended that the prisoner had the right to enter the fight to protect his father, but he only had that right to the same extent and under the same circumstances under which the father himself could have used force. If the father entered the fight willingly, and had not afterwards withdrawn from the fight and retreated to the wall, or if he used excessive force, he would have been guilty if he had slain his assailant. The same principle would apply to the conduct of the son, fighting in defense of a father who had not retreated to the wall or if the prisoner used excessive force.

The prisoner has no cause to complain of the verdict of the jury who upon the evidence might well have found a verdict for a higher offense. The sentence of the court was certainly moderate, and was dictated, we presume, by the opinion of the judge that the father of the prisoner was the guilty cause of the slaying of the deceased, and the wounding of so many others. The fear of the law and the certainty of punishment, should be such as to prevent the recurrence of such events in this State. This can only be done by making the consequences of such conduct exceedingly unpleasant and disagreeable to those, who in thorough contempt of the law and the courts, perpetrate such acts.

No error.