JIM JOHNSON *v*. STATE.

(*Nashville.* December Term, 1911.)

1. **CRIMINAL LAW.** **Misconduct of State's attorney in reading to the jury a memorandum indorsed on indictment showing State's witnesses examined before grand jury is prejudicial and reversible error, when.**

Where the first trial of the accused did not occur until more than eight years after the homicide, and his second trial did not occur until five years later, when the attorney of the accused argued that the memory of the witnesses on both sides was likely to be dim and unreliable, and, in reply thereto, the State's attorney made the point that the witnesses for the State were more likely to remember the transaction correctly, because they had testified before the grand jury, and that the facts were thereby impressed on their minds, more deeply than upon the minds of the witnesses for the accused; and, upon objection made to this statement, on the ground that there was no testimony showing the facts of such examination, the State's attorney read to the jury a memorandum on the back of the indictment purporting to show that the witnesses referred to had been examined before the grand jury, to which the attorney of the accused again objected, on the ground that this memorandum had not been put in evidence; whereupon the trial judge ruled that it was competent for the State's attorney to refer to the memorandum simply to show the fact that the witnesses had been so examined, to which ruling, the attorney of the accused objected, but the objection was overruled. *Held*, that such conduct of the State's attorney and the action of the trial court constituted prejudicial and reversible error. (*Post, pp.* 424-427.)

2. **SAME.** **Where the evidence shows involuntary manslaughter, an inaccurate, unnecessary, and harmless charge on that subject is not reversible error.**

Where all the witnesses, including the accused, testified that the accused shot the deceased, but the accused claimed that he shot

Johnson v. State.

the deceased because he was advancing on him, with an open knife in his hand, there was no evidence indicating involuntary manslaughter, and a charge on that subject was unnecessary. However, the accused cannot complain of the inaccuracy and needlessness or unnecessariness of such charge, if he was not injured by it. (*Post, pp.* 427, 428.)

3. SAME. Charge that self-defense is not available for shooting an intervening peacemaker whose brother was putting accused in danger of death or great bodily harm is proper, when.

The court properly gave in charge to the jury an instruction offered by the State to the effect that if, when the defendant shot the deceased, the latter was not advancing upon him with a knife, but was only interceding as a peacemaker, and had thrown himself between the defendant and his (decedent's) brother to prevent a difficulty, having nothing in his hands, and having no reasonable ground on which to base an honest belief that he was in danger of death or great bodily harm at the hands of the deceased, then he would have no right to shoot the deceased and the plea of self-defense would be unavailable, even though he believed that the decedent's brother was putting him in danger of death or great bodily harm, provided he shot the deceased purposely. (*Post, pp.* 428, 429, 430.)

4. SAME. Refusal of requested charge that defendant, without fault, may shoot an intervener trying to disarm him against his aggressive adversary, is erroneous, when.

The court erroneously refused to give a requested charge asked by the defendant to the effect that if the defendant was peaceable and quiet, and did nothing to bring on the difficulty, and the decedent's brother approached and menaced the defendant, so as to cause him to be apprehensive for his life or of great bodily harm, whereupon the deceased undertook to intervene and disarm defendant, when he was faultless, and thus committed an assault upon the defendant which he apprehended put his life in jeopardy, either from the deceased or his brother, then the

defendant would have the right to act upon such apparent danger, and, if he acted in good faith, he could slay his adversaries in order to save himself from death or great bodily harm. (*Post, pp.* 428-431.)

5. **SAME. One intervening to disarm the defendant against unlawful assault becomes a particeps criminis and may be defended against.**

A person who intervenes to disarm a man who is trying to protect himself against an unlawful assault of a third party, which assault puts him in danger of death or great bodily harm, becomes a *particeps criminis* with such third party, and may be defended against in the same manner. (*Post, p.* 431.)

6. **SAME. Refusal to charge a requested instruction on self-defense that is not strictly accurate is not reversible error; suggested corrections.**

Where the accused requested an instruction to the effect that a person who is without fault, when menaced by threatening words and gestures, or by acts *calculated* to cause him to become apprehensive of his safety, and of death or great bodily harm, is not compelled to wait until his adversary strikes him, or even get in a position to slay or strike him; but if the danger is so apparent or imminent, or if he in good faith believes such danger is *apparent*, then he may strike and even take the life of his adversary or antagonist, and he is not compelled to retreat, when a retreat might, on account of the violence of the assault, result in death or great bodily harm to him, such requested instruction is *held* to be correct in the main, but is held to be inaccurate and defective in the use of the word "calculated," for which the phrase "of such nature as" should have been substituted; and after the italicized word "apparent," the words "and imminent" should have been added; and no reversal would be granted for the refusal to charge such inaccurate request, since such instructions must be strictly accurate in order to put the trial judge in error when he refuses to charge the same. (*Post, pp.* 431, 432.)

Johnson v. State.

7. SAME. "Overt act" is defined; proper refusal of requested instruction that certain facts, if found to be true, constitute an "overt act" entitling accused to acquittal.

The term "overt" simply means "open," and in homicide cases an "overt act" is an open act, indicating a present purpose to do immediate great bodily harm, which can be shown in a given case only, by the, evidence; for the question of what is an "overt act" is a question of fact, which must be left to the jury in every case, and the jury must judge of it in the light of all the evidence. Therefore, the refusal of the trial court to give in charge to the jury a requested instruction stating that certain facts, if found to be true, would constitute an overt act entitling the accused to a verdict of not guilty, was proper, and not erroneous. (*Post, pp.* 432-434.)

Cases cited and approved: Jackson v. State, 6 Bax., 452; Allison v. United States, 160 U. S., 203.

8. SAME. Accused has same right of self-defense against an intervener as against the party, even a brother, in whose behalf the intervention was made.

Where the accused, when he killed the deceased, was in danger of death or great bodily harm at the hands of a brother of the deceased, or honestly believed himself to be so on reasonable grounds, and at that time the deceased intervened and sought to disarm the accused, or approached him with a knife, the accused then had the same right to defend himself against the deceased as against his attacking brother, even though the deceased was intervening in behalf of his brother, because no one, not even a brother, has any right to intervene in behalf of another who is in the wrong; for the right of intervention exists only where it is in behalf of one acting in his rightful self-defense. (*Post, pp.* 434-436.)

Cases cited an approved: Smith v. State, 105 Tenn., 305; Cooper v. State, 123 Tenn., 129-143 (and citations); State v. Greer, 22 W. Va., 800; State v. Brittain, 89 N. C., 481; State v. Cox, 153 N. C., 638; Mitchell v. State, 129 Ala., 23; Wheat v. Common-

wealth (Ky.), 118 S. W., 264; State v. Hennessey, 29 Nev., 320, 340; Wheatley v. State, 93 Ark., 409; People v. Travis, 56 Cal., 251, 255.

FROM WILLIAMSON.

Appeal from the Circuit Court of Williamson County. —DOUGLAS WIKLE, Judge.

HENDERSON & HENDERSON and TYLER BERRY, for Johnson.

ATTORNEY-GENERAL CATES, for State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was convicted of voluntary manslaughter at the April term, 1911, of the circuit court of Williamson county, and sentenced to a term of five years' confinement in the State penitentiary. He has appealed and assigned errors.

The judgment must be reversed because of the following error committed on the trial: During the argument before the jury one of the attorneys representing the State made the point that the witnesses for the State were more likely to remember the transaction correctly, because they had testified before the grand jury, and had thereby gotten the facts impressed upon their minds more deeply than had the witnesses for the plaintiff in

error.   This statement was immediately objected to by
the attorney for the plaintiff in error, on the ground that
there was no testimony showing the fact of such exami-
nation of the State's witnesses before the grand jury.
Thereupon the attorney then addressing the jury on be-
half of the State read to the jury a memorandum on the
back of the indictment purporting to show that the wit-
nesses referred to had been examined before the grand
jury.   Plaintiff in error's attorney again objected, on the
ground that this menorandum had not been put in evi-
dence.   Thereupon the trial judge ruled that it was com-
petent for the attorney for the State to refer to the
memorandum simply to show the fact that the witnesses
had been so examined.   Plaintiff in error's attorney
again objected, but the objection was overruled.

. The point was very material, because, owing to the
absence of the plaintiff in error from the State, the
first trial of the case at the April term, 1906, had not
occurred until a period of more than eight years had
elapsed from the date of the homicide.   Hence the argu-
ment on the part of the plaintiff in error's attorney that
the memory of the witnesses on both sides was likely to
be dim and unreliable, when the second trial occurred
at the April term, 1911, and the reply of the attorney for
the State before referred to, showing why the memory
of the State's witnesses was more likely to be accurate
than that of the plaintiff in error's witnesses.

The memorandum on the back of the indictment was
not evidence, and should not have been referred to at
all.   We have no doubt the plaintiff in error's defense.

was seriously injured, and the results of the trial affected, by this action of the attorney for the State and the ruling of the trial judge. The injury would have been a decided one happening at any stage of the trial; but, happening as it did, in the closing address, when the plaintiff in error's attorney had no reply, it must have been even greater, and especially in view of the fact that there was a very great conflict in the evidence. We have read with care the whole record, and we have rarely seen one in which there was greater conflict. According to eyewitnesses who testified for the State, Mike Copeland, the subject of the homicide, was ruthlessly shot down by plaintiff in error while approaching with outstretched hands, begging him not to kill his brother, Marse Copeland, at a time when the latter was not offering to do plaintiff in error any harm, although it is conceded that a few moments before this Marse Copeland had used threatening language to plaintiff in error, and had exhibited a pistol, and had demanded of plaintiff in error that he settle at once a small debt which he claimed the latter owed him. The construction which the State's witnesses gave the matter was that when Marse Copeland advanced, using this threatening language and manner, plaintiff in error receded a few steps, drew his pistol, and said, "Let's fight it out;" that thereupon Marse Copeland stopped, and Mike Copeland interceded for his brother in the manner above stated, and plaintiff in error shot him in the bowels, and said to him, "Now, d—— you, lie down and die;" and, having thus disposed of Mike, he turned his atten-

tion to Marse, and began shooting at him, and Marse did not shoot until he was then attacked. According to an equal number of eyewitnesses introduced in behalf of plaintiff in error, when Marse came up and made the demand for the debt, and used the threatening language, and exhibited the threatening manner above referred to, Mike Copeland drew a knife from his pocket and at once intervened in behalf of his brother, approaching plaintiff in error with the open knife, and threatening to kill him, and striking at him with his knife, and actually cutting his clothes, and while Mike was so acting the plaintiff in error shot him and killed him.

In view of this great conflict in the evidence, and the fact that the witnesses were examined on the last trial some fourteen years after the homicide, the point made by the use of the memorandum on the back of the indictment was very important.

Objection was made to the charge of the court as a whole because too meager. We think the requests which the trial judge gave in charge added enough to save the charge from this objection, although it would have been much better if his honor had indicated more clearly the legal rules applicable to the different phases of the case.

It is said the charge was inaccurate upon the subject of involuntary manslaughter. If there was any inaccuracy, it was such as the plaintiff in error could not complain of. Moreover, there was no evidence indicating involuntary manslaughter. All of the witnesses, plaintiff in error included, testified, that plaintiff in er-

ror shot at Mike Copeland. Plaintiff in error says he shot him because he was advancing on him with an open knife in his hand. The charge upon the subject of involuntary manslaughter was unnecessary, when there was no evidence at all in any way indicating that there had been such involuntary manslaughter. However, the plaintiff in error was not injured by what was said in the charge upon this subject.

It is insisted the court below erred in giving in the charge to the jury the following instruction offered by the State:

"I further charge you that if you find from the proof beyond a reasonable doubt that, at the time the defendant shot Mike Copeland, the latter was not advancing upon him with a knife, but was only interceding as a peacemaker, and had thrown himself between the defendant and Marse Copeland to prevent a difficulty, having nothing in his hands, and that the defendant could see that he had no knife in his hands, and had no reasonable ground on which to base an honest belief that he was in danger of death or great bodily harm at the hands of Mike Copeland, then he would not have the right to shoot Mike Copeland, and the plea of self-defense would not avail him; and this is so, even if he believed that Marse Copeland was putting him in danger of death or great bodily harm, provided he shot Mike purposely."

We think this instruction was properly given.

It is insisted the trial judge committed error in re-

fusing to give the following special instruction offered by the plaintiff in error:

"I charge you that if you find from the evidence that the defendant was sitting peaceably and quietly, and did nothing to bring on the difficulty in this case, and if you find that Marse Copeland approached the place where the defendant was thus sitting, and menaced him in such language and tones and by such acts as caused the defendant to be apprehensive for his life, or apprehensive of great bodily harm, and if you find that the deceased undertook to intervene and disarm the defendant when the defendant was faultless, and thus commit an assault upon the defendant which the defendant had apprehended put his life in jeopardy, either from Marse Copeland or from the deceased, then the defendant, if he, as I instructed you, was apprehensive for his life or great bodily harm, would have the right to act upon such apparent danger, and, if he acted in good faith, he could slay his adversaries in order to save himself from death or great bodily harm."

We think this instruction should have been given.

This instruction was based on the case as exhibited by the witnesses for the plaintiff in error, while the instruction set out supra exhibited the case from the standpoint of the State's witnesses. The two, if they had been given, would have instructed the jury upon the two theories, as to each of which there was quite a good deal of evidence.

Under the instruction offered by the State the jury were told that if Mike Copeland was interceding purely

as a peacemaker, and for that purpose had thrown himself between the contending parties for the purpose of preventing a difficulty, being at the time unarmed, as plaintiff in error could see, and the latter had no reasonable ground upon which to base an honest belief that he was in danger of death or great bodily harm at the hands of this peacemaker, he would not have the right to shoot him on the plea of self-defense, even though he believed that at the time his real adversary, Marse Copeland, was putting him in danger of death or great bodily harm.

In the instruction offered by the plaintiff in error it was asked by the attorney for the latter that the jury be instructed that if, while the plaintiff in error was without fault, and was being assailed by Marse Copeland in such a manner as to cause him to be apprehensive of death or great bodily harm at the hands of the latter, the said Mike Copeland intervened for the purpose of disarming the plaintiff in error, and the latter was at this moment apprehensive for his life or great bodily harm at the hands of Marse Copeland, by reason of the language, tones, and acts of said Marse Copeland, at the time, he would have the right to act upon such apparent danger, and, if acting in good faith, he could slay Mike Copeland, as well as Marse Copeland, in order to save himself from death or great bodily harm. On the hypothesis put in this instruction, Mike Copeland was intervening, not as a peacemaker, but for the purpose of disarming a combatant, who was at the time without fault, and whose life was being put in immediate

peril at the hands of a third party. A person who thus intervenes to disarm a man who is trying to protect himself against an unlawful assault from a third party, which assault puts him in danger of death or great bodily harm, becomes *particeps criminis* with such third party, and may be defended against in the same manner.

The next instruction offered by plaintiff in error (the seventh) is practically covered by the one which we have just held should have been granted, and, if given in connection therewith, would probably have misled the jury.

The succeeding instruction (No. 8) offered by plaintiff in error was as follows:

"I instruct you that a person who is without fault, when menaced by threatening words and gestures, or by acts calculated to cause him to become apprehensive of his safety, and apprehensive of death or great bodily harm, is not compelled to wait until his adversary strike him, or fell him, or even get in a position to slay or strike him; but if the danger is so apparent or imminent, or if he, in good faith, believes such danger is apparent, then he may strike, and even take the life of his adversary or antagonist, and he is not compelled to retreat when a retreat might, on account of the violence of the assault, result in death or great bodily harm to such defendant."

This instruction is correct in the main, but is defective in one respect. In the clause "or if he, in good faith, believe such danger is apparent," to be strictly accurate should read, "or if he, in good faith, believe such danger is apparent" and "imminent." The word "calculated"

is also unfortunate. In the connection in which it was used it was meant to be equivalent to the words "of such a nature as." By reason of the defects mentioned, we would not reverse for the refusal to give this instruction, since instructions must be strictly accurate in order to put the trial judge in error, yet, as the case must go back on other grounds, we think it proper to state what we believe to be the correct view.

The trial judge refused to give in charge to the jury plaintiff in error's instruction No. 1, which was as follows:

"If you find from the proof that Marse Copeland came to the crap game and said to the defendant, 'Jim, I want my money you owe me,' and that the defendant told him to come back later, and that an hour and a half or some time later Marse Copeland returned to the card game and asked Jim for his money, and that Jim, the defendant, said he didn't have it, and that Marse then stepped upon the rug or blanket upon which the card game was being played, and said, 'By G——, there shan't be another card game played here until I get my money,' Marse naving his right hand in his coat pocket upon his pistol, and that the defendant, Jim Johnson, heard this remark and saw that Marse had his hand upon the pistol, then this act of Marse in stepping upon the blanket with his hand upon the pistol, together with the words, 'By G——, there shan't be another game of cards played here until I get my money,' constituted an overt act upon his (Marse's) part, made Marse Cope-

land the aggressor, and authorized Jim Johnson in believing that he was in danger of great bodily harm or death. Now, gentlemen, if you find the above to be the facts, and if you further find that the deceased, Mike Copeland, a brother of Marse Copeland, rose to his feet, passed in front of his brother, Marse Copeland, and followed Jim Johnson (who had gotten up and gone backward), and if you believe that Mike Copeland, the deceased, lunged at the defendant, or gripped his hand, and if you further believe that the defendant said to the deceased, 'G—— d—— you, stand back,' or 'Stop, stand back,' and jerked loose from the deceased, and shot, then, in that event, I charge you that your verdict should be not guilty, for the reason that, if the above facts are found by you to be true, that the deceased, Mike, intervening in behalf of his brother, Marse, stands in the shoes of his brother, Marse, and can claim no more protection at the hands of the law than Marse."

As previously stated, an instruction offered must be correct in form and substance in order to put the trial judge in error in refusing it. This instruction is defective. It undertakes to tell the jury what is an overt act. This is a question of fact, which must be left to the jury in every case. *Jackson* v. *State,* 6 Baxt., 452; *Allison* v. *United States,* 160 U. S., 203, 16 Sup. Ct., 252, 40 L. Ed., 395. "Overt" simply means "open." In homicide cases an overt act is an open act, indicating a present purpose to do immediate great bodily harm. What this overt act is can be shown in a given case only by the evidence, and the jury must judge of it in the light

125 Tenn.—2'

of all the evidence. The court cannot properly say to them that this or that act is an overt act.

As to the residue of the instruction, as a proposition of law, if, indeed, the plaintiff in error was at the moment in danger of death or great bodily harm at the hands of Marse Copeland, or honestly believed himself to be so on reasonable grounds, and at that time Mike Copeland intervened in the manner stated, the plaintiff in error had a right to defend against him the same as against Marse Copeland. This falls within the principle which we have stated in disposing of the sixth instruction offered by the plaintiff in error. This would be true, even though Mike was intervening in behalf of his brother, because under the facts assumed he would stand in the shoes of his brother, and could claim no more protection at the hands of the law than could his brother.

The rule upon this subject is plain and clear. It is so held in our own cases.

A very interesting case upon this subject is *Tom and Robert Smith* v. *State,* 105 Tenn., 305, 60 S. W., 145. In that case, before the difficulty was over the two Smith brothers and the two Fowler brothers were engaged in a combat, which resulted in the death of the two Fowlers. The original difficulty was between Tom Smith and Bud Fowler. Tom Smith was the aggressor. He brought on the difficulty between himself and Bud Fowler. While he was shooting at Bud Fowler, the latter's brother, Henry Fowler, intervened. Then Bob Smith, the brother of Tom, shot Henry Fowler, who was killed

by this shot and by other shots immediately delivered into his body by Tom Smith. The court held, on this state of facts, that inasmuch as Tom Smith was in the wrong, his brother, Bob Smith stood in his shoes when he shot Henry Fowler, and was guilty of murder; also that inasmuch as Bud Fowler was properly defending himself against Tom Smith, his brother, Henry Fowler, properly intervened in his effort to prevent Tom Smith from committing murder upon the body of Bud Fowler. It is thus seen in that case both phases were presented. Bud Fowler was endeavoring to defend himself against the felonious aggression of Tom Smith, and Henry Fowler, his brother, joined him in that defense, and under the law was held to be acting properly in his effort to prevent the commission of a felony upon the person of his brother, while Bob Smith, who was aiding his brother in the committing of that felony, stood in the shoes of his brother and was guilty with him.

There is an elaborate discussion of the subject in the opinion of Shields, J., in the case of *Cooper* v. *State,* 123 Tenn., at pages 129 to 143, inclusive, 138 S. W., 826, which we regard as a sound exposition of the law. We can add nothing to what is there said, except that the principles there laid down are supported, not only by the cases and text-books referred to, but by the great weight of authority elsewhere. In addition to the cases there cited, we refer to the following as in entire accord therewith: *State* v. *Greer,* 22 W. Va., 800; *State* v. *Brittain,* 89 N. C., 481; *State* v. *Cox,* 153 N. C., 638, 69 S. E., 419; *Mitchell* v. *State,* 129 Ala., 23, 30 South., 348; *Wheat* v.

*Com.* (Ky.), 118 S. W., 264; *State* v. *Hennessy,* 29 Nev., 320, 340, 90 Pac., 221; *Wheatley* v. *State,* 93 Ark., 409, 125 S. W., 414; *People* v. *Travis,* 56 Cal., 251, 255.

We deem it necessary to refer to this and other points appearing in the instructions offered because these questions will arise in the next trial.

For the error indicated, the judgment will be reversed, and the cause remanded for a new trial.