STATE OF NORTH CAROLINA v. KATHERINE BELL

No. 106

(Filed 10 June 1971)

1. Homicide § 15— homicide prosecution — testimony relating to position
   of defendant and deceased

   Witness' testimony on cross-examination relating to the location
   of defendant and deceased at the time of the homicide *held* admissible
   as testimony of common appearances, facts, and conditions; also ad-
   missible was the witness' testimony that the defendant's position could
   be determined by the presence of bullet holes in a porch post.

2. Criminal Law § 75— admission of incriminating statements

   Incriminating statements made by a defendant who voluntarily
   went to police headquarters for the purpose of stating her side of the
   shooting *held* admissible.

APPEAL by defendant from *Hasty, J.,* June 3, 1970 Ses-
sion, BUNCOMBE Superior Court. The appeal was docketed in the
Court of Appeals and transferred to the Supreme Court for
appellate review under the referral order of July 31, 1970.

In this criminal prosecution the defendant, Katherine Bell,
was indicted for the murder of Clara Mae Morgan. The indict-
ment charged the offense occurred on April 13, 1970. Upon the
proper showing of indigency, the court appointed Robert L. Har-
rell attorney for the defendant.

At the trial, the State's witness, Mary Clyburn, testified
that she and the deceased, Clara Mae Morgan, shared the same
ground floor apartment at No. 141 Weaver Street in Asheville.
The defendant, Katherine Bell, occupied a second story apart-
ment, No. 144, immediately above Apartment No. 141. A daugh-
ter of the deceased occupied an apartment across the "yard"
about 100-150 feet from the two apartments on Weaver Street.

Mary Clyburn further testified that on April 6, 1970, at
about 11 o'clock, she was in her apartment, that she heard a
gunshot, saw smoke and smelled gunpowder. The smoke drifted
over the defendant's bannister into the apartment of the wit-
ness.

Officer Hensley of the police department arrived on the
scene shortly after 11 o'clock. He found Clara Mae Morgan lying
in the doorway of a small house near the apartment on Weaver
Street. She was alive. Her clothing was bloody. He helped her

into the ambulance which carried her to the hospital. An immediate operation diclosed extensive and small pellet holes in her right lower rib cage and 18 holes in the small bowels. The following Wednesday, she started showing evidence of delirium tremens. She was never conscious thereafter. "Of course, (her death) was precipitated by the gunshot injury that made her sick in the first place."

After Officer Hensley assisted the deceased into the ambulance, he returned to police headquarters. In about thirty minutes the defendant and her husband appeared at police headquarters. Before permitting any disclosure, the officers gave the defendant the customary warnings. The defendant then made both an oral and a written statement. When the prosecution undertook to offer in evidence the defendant's admissions, defense counsel objected. Whereupon the court conducted a *voir dire* and heard the State's witnesses. The defendant waived her right to be heard or to offer evidence on the *voir dire*.

The court made detailed findings of fact and concluded that the defendant's oral and written statements were properly admissible against her as having been freely, understandingly and voluntarily made. Whereupon the oral evidence of the officer and the written statement of the defendant were offered in evidence before the jury. The written statement corresponds in substance with the oral statement. Material parts of the written statement, which was prepared by the defendant's husband, are here quoted:

"My name is Katherine Bell and I live at 144 Weaver Street and Cara Mae Morgan lives in the basement apartment. The whole thing started on the preceding Saturday when Clara Mae's boyfriend and Mary Clyburn jumped on me and stabbed me in the side. I took out a warrant for him and went to police court on the sixth for trial and Clara Mae's boyfriend got six months. When I got back home Clara Mae started cursing me and said she was going to get me for causing her boyfriend to get that time. I was afraid of her and when she came up on my porch, I stepped in the door and picked up my husband's shotgun and it went off. I had never fired a gun before."

Defense counsel on cross-examination, asked the State's witness Clyburn this question: "Now you don't know whether she

State v. Bell

(deceased) went over there after she was shot or before she was shot, do you?" The witness gave this answer: "All right she had to be shot over there because the bullet holes were right there against the post where she shot at her." Motion to strike the answer was overruled. Defendant's Exception No. 1.

The State introduced a section of the post taken from the house across the yard described by the witness Clyburn. The post contained lead pellets. The witness stated: "They never had been there before." The foregoing is the subject of Exception No. 2.

The defendant testified as a witness in her own defense, repeating in substance the contents of the written statement and in addition stated that she did not remember firing the gun, but did remember reaching behind the door for it. She said: ". . . (T)hat woman . . . had beat me up. They broke into my house and tore the screen door down . . . . When she came on my porch and said I'm coming to get you, that's when the gun went off. I don't know how far I was from her when the gun went off."

The jury returned a verdict of guilty of manslaughter. From that judgment imposed the defendant appealed.

*Robert L. Morgan, Attorney General, by Ralph Moody, Deputy Attornel General, for the State.*

*Robert L. Harrell for defendant appellant.*

HIGGINS, Justice.

The defendant's assignments of error involve: (1) The refusal of the court to strike the reply of the State's witness Clyburn to defense counsel's question on cross-examination as to the position of the deceased at the time the fatal shot was fired (Exceptions Nos. 1 and 2); (2) The court's finding and conclusion that defendant's admissions to the officer were freely, voluntarily and understandingly made (Exceptions Nos. 3, 4 and 5); (3) The refusal of the court to direct a verdict of not guilty at the close of the evidence (Exceptions Nos. 6 and 7).

[1] Mary Clyburn, a witness for the State, testified she heard a shot from the defendant's apartment above hers and thereafter she saw Clara Mae Morgan lying in the doorway to the apartment across the yard, approximately 100-150 feet away. The defendant testified the deceased was attempting to enter her apart-

ment at the time the gun went off. Hence the question became material whether the deceased was across the yard by the post or whether she was attempting to enter the defendant's upstairs apartment. Defense counsel sought to have the State's witness say that the witness did not know whether the deceased crossed the yard before or after the shot was fired. In reply to the questions, the witness gave the answer heretofore quoted. The fresh pellet holes in the post which were not there before the shooting, was the answer the witness gave to a question which opened the door for that answer. The answer of the witness was in explanation of and giving her reason for refusing to say that she did not know whether the deceased crossed the yard before or after the shot.

"An observer may testify to common appearances, facts and conditions in language which is descriptive of facts observed so as to enable one not an eyewitness to form an accurate judgment in regard thereto." *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469. The defendant's Assignment of Error No. 1 based on Exceptions Nos. 1 and 2 is not sustained.

[2]   The evidence discloses that within thirty minutes after the investigating officer placed the wounded woman in the ambulance, the defendant and her husband appeared at police headquarters. Before they were permitted to discuss the shooting, proper and suitable warnings were given. The defendant made oral admissions the gun in her hands "went off." She and her husband entered a private room. When they returned they delivered the written statement which her husband drafted and the defendant signed. When the defendant challenged the State's right to introduce the admissions, the court conducted a thorough inquiry in the absence of the jury. The defendant elected not to offer evidence on the *voir dire.* The court concluded the admissions were freely, voluntarily and understandingly made and were admissible in evidence. In conducting the *voir dire* and in hearing evidence and making the findings, the court was extremely careful that all of the defendant's rights were properly accorded her. The defendant and her husband voluntarily went to police headquarters for the purpose of stating the defendant's side of the controversy. Her signed statement, written by her husband, was her voluntary account. Sometimes overlooked, is the following from *Miranda v. Arizona:*

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona,* 394 U.S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R. 3rd 974. See also *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *State v. McRae,* 276 N.C. 308, 172 S.E. 2d 37; *State v. Atkinson,* 278 N.C. 168, 179 S.E. 2d 410.

Defendant's Assignments of Error Nos. 2 and 3 based on Exceptions Nos. 3, 4 and 5 are not sustained.

The evidence in the record was ample to go to the jury and sustain the verdict. *State v. Cooper,* 273 N.C. 51, 159 S.E. 2d 305; *State v. Cox,* 153 N.C. 638, 69 S.E. 419. Assignment of Error No. 3 based on Exceptions Nos. 5 and 6 is not sustained.

In the trial, judgment and sentence, we find

No error.