# STATE v. DELBERT F. DUMAS.[1]

May 31, 1912.

Nos. 17,700—(9).

**Attempt to commit a crime.**

No definite rule can be laid down, applicable to all cases, as to what constitutes an attempt to commit a crime, as each case must depend largely upon its particular facts. To constitute such an attempt, there must be an intent to commit the crime, followed by an overt act or acts tending, but failing, to accomplish it. The overt acts need not be such that, if not interrupted, they must result in the crime charged. They, however, must be something more than mere preparation, remote from the time and place of the intended crime; but if they are not thus remote, and are done with the specific intent to commit the crime, and directly tend to accomplish it, they are sufficient to warrant a conviction.

**Arson — evidence.**

Evidence considered, and *held* that it tends to show or prove facts constituting the offense charged in the indictment, which states facts sufficient to constitute a public offense.

Defendant was indicted by the grand jury of Beltrami county for the crime of attempted arson in the third degree and was tried in the district court for that county by McClenahan, J., and a jury which rendered a verdict of guilty as charged in the indictment. At the request of the defendant, the court certified to this court the questions enumerated at the beginning of the opinion. Remanded for further proceedings.

*Freeman P. Lane* and *Lane & Malmberg,* for appellant.

*Lyndon A. Smith,* Attorney General, *Alexander L. Janes,* Assistant Attorney General, and *E. E. McDonald,* Special County Attorney, for the State.

[1] Reported in 136 N. W. 311.

[Note] As to what is sufficient to constitute attempt to commit arson, see note in 4 L.R.A.(N.S.) 417.

START, C. J.

On September 15, 1911, an indictment was duly returned to the district court of the county of Beltrami, purporting to charge the defendant with the crime of attempted arson in the third degree. The case was tried, and the jury, on October 9, 1911, returned a verdict of guilty as charged in the indictment. Thereupon the court, at the request of the defendant, certified to this court, pursuant to R. L. 1905, § 5409, these questions:

"First. Did the indictment state facts sufficient to constitute a public offense?

"Second. Did the testimony offered on the part of the state, and included in this report, show or prove facts constituting the public offense charged in the indictment?

The evidence referred· to in the last question was made a part of the court's certificate. The second question is the important and controlling one. If the question be literally construed, it would be reasonably clear that we would not have jurisdiction to determine it. The statute authorizing the trial judge to certify important or doubtful questions of law to this court is not a substitute for an appeal. The sole office of the certificate is to report to the Supreme Court one or more important or doubtful questions of law, and not the general question whether the evidence shows or proves the defendant to be guilty, which is a mixed question of fact and law to be decided by the jury, aided by the advice of the trial judge as to the law of the case.

It is however, conceded by counsel for the respective parties that it was the intention of the trial court, and their own understanding, that the question certified was one of law only, and to this effect: Did the. evidence tend to show or prove facts constituting the offense charged in the indictment? Such being the admitted scope of the question, it was a proper one to be certified to this court, in view of the situation confronting the learned trial judge, as indicated in his opinion in denying the defendant's motion, made at the close of the state's case, for an order discharging him.

We deem it proper in this connection to state that, in ordinary cases, questions whether the evidence tends to establish the guilt of

the defendant ought not to be certified to this court, but that such questions should be presented by appeal from an order denying a motion for a new trial, or from the judgment.

There was evidence in this case, assuming, as we must, its credibility, tending to show or prove these facts: R. E. Smith, in the fall of 1910, was the manager of a general merchandise business at Puposky, Minnesota, and there continued to conduct such business until July of the next year. About the middle of April, 1911, Mr. Smith went to the office of the defendant, who was a practicing physician at Cass Lake and mayor thereof, for medical attention. As he entered the office, he saw there two men, with whom the defendant was talking, and was directed by him to step into the rear office. After the two men left, the defendant asked Smith if he had noticed the two men and told him that they were a couple of the smoothest men in that part of the country, and had done some pretty big jobs. The defendant then opened his safe and showed Smith two heavy revolvers and some bottles, which he said contained nitroglycerin and some caps, and said that this outfit belonged to the two men, and that they had just put them in the defendant's safe. The defendant then asked Smith what business he was in, who replied, "In the mercantile business at Puposky." The defendant then asked him how much insurance he had on his building, and, upon being told, he said: "What you ought to do is to put on a couple of thousand more, and get these fellows to help you out." Smith replied that it would not be a bad scheme, and he would think the matter over and talk with him about it again. This conversation was reported by Smith to certain parties at Bemidji, of whom the assistant fire marshal was one. Thereupon, at their suggestion, he returned to Cass Lake and there saw the defendant, who asked him if he had decided to do anything with his place, and he answered that he would a little later. The defendant then told Smith that he could get the men to do the job whenever he was ready; but it would take some time, as they were out on other jobs.

On June 14, 1911, the defendant and Smith, pursuant to the re-

quest of the defendant, met in a saloon in Bemidji, and the defendant introduced to Smith two men, known as Mike Davis and Martin Behan, who agreed with the defendant to burn the building and blow the safe, so as to show that it was "a yeggman's job." There was no direct evidence as to the order in which this was to be done; but the fair·inference from the evidence is that the one definite and primary purpose of the conspiracy was the burning of the building to get the insurance, and that the blowing of the safe was simply an incident to such purpose. The plan and method of executing the conspiracy were discussed and agreed upon by the defendant and his agents, who were to be paid $100 each. Smith was to pay the defendant $300 for the job. One of them, Mike Davis, was furnished by Smith with a key to the building, to enable them to enter it. A plan, showing the location of the building to be burned, was made, and the location of the kerosene therein, which was to be used in the burning of the building, was pointed out to the men. The defendant aided the men, Davis and Behan, in obtaining a part, at least, of the necessary outfit for the burning of the building and the blowing of the safe.

On the afternoon of June 16, 1911, Davis and Behan were driven to a point within a half mile of Puposky, where they remained until about six o'clock, when they went into the store building they were hired by the defendant to burn, asked the clerk where they could get a lunch, and looked over the premises. One of them bought some tobacco, and asked for and was given matches with it. After they got their lunch, they went into a vacant building, and there slept until one o'clock the next morning, when they started for the building. They then had nitroglycerin, dynamite fuse and caps, flash light, candle wicking, and matches, and on the way they broke open a toolhouse and took therefrom a maul and a pick, which they took into the building they were to burn. When they reached the building, they unlocked the door with the key furnished them and entered. Immediately thereafter they heard a noise like something falling in the rear of the store, where the sheriff and other officers were, unknown to them, concealed. Thereupon they (Behan and Davis) walked out of the building by the front door, and walked around to

the east side thereof, where, by the aid of their flash light, they discovered a hole cut in the wall, through which they looked and saw a rifle and blankets. They then started for the front door of the building, for the purpose of again entering it; but, as they reached the front of the building, they were encountered by some of the officers, shots were exchanged, Behan was wounded and captured, and Davis escaped.

This brings us to the question whether the evidentiary facts stated tend to show or prove that the defendant was guilty of the offense charged in the indictment, an attempt to commit the crime of arson in the third degree. Section 4771, R. L. 1905, defines an attempt to commit a crime thus: "An act done with intent to commit a crime, and tending, but failing, to accomplish it, is an attempt to commit that crime." It is to be noted that our statute defines an attempt to commit a crime, which, as construed in State v. Miller, 103 Minn. 24, 114 N. W. 88, is an overt act or acts done with intent to commit the particular crime, and tending, but failing, to accomplish it. This is a broader specification of what constitutes an attempt to commit a crime than the English rule, which was to the effect that the overt act must be the last one before complete success, if not interrupted. We find a serious conflict in the text-books and judicial decisions as to what overt acts, done pursuant to an intent to commit a crime, are sufficient to constitute an attempt to commit the offense; but all agree that intent, followed by mere acts of preparation, is not alone sufficient.

The case of People v. Murray, 14 Cal. 160, which has been followed in many other states, is greatly relied on by the defendant in this case. The case is a leading one of those which hold that the attempt to commit a crime must be manifested by acts which would end in the commission of the particular offense, but for the intervention of circumstances independent of the will of the party. The charge in the Murray case was an attempt by the defendant to contract an incestuous marriage with his niece. His intention and determination to marry his niece were shown by the evidence; also

118 M.—6.

that he eloped with her for that avowed purpose, and that he requested a witness to go for a magistrate to perform the ceremony. The court, however, held that until the magistrate was engaged and the parties stood before him there was no attempt to marry his niece. The logical result of this strict rule would seem to be that no overt acts are sufficient to show an attempt to commit a crime, unless they are such as inevitably to consummate the crime, save for unlooked-for interference.

In the case of People v. Stites, 75 Cal. 570, 17 Pac. 693, the defendant was charged with the crime of attempting to place an obstruction upon a street railway track. The evidence tended to show that he had in his possession a dynamite bomb, and was on his way to meet a confederate, and was then to place the bomb on the track; but, observing the police officers watching him, he surreptitiously deposited the bomb in a flower garden, and ran away. He was pursued and captured by the officers. The court held that the evidence was sufficient to warrant his conviction of the offense charged, a material modification of the strict rule of the Murray case.

It seems quite clear that an adherence to the strict rule of the Murray case would prevent, in most cases, any conviction on a charge of attempting to commit a crime, and practically emasculate our statute, the purpose of which is to prevent crime by punishing all attempts to commit it.

Another line of cases is to the effect that where the evidence shows that the defendant, intending to commit a particular crime, procures or solicits another to perpetrate it, and furnishes him material for the purpose, it is sufficient to warrant the defendant's conviction. The case of People v. Bush, 4 Hill, 133, is one of the earliest and, perhaps, the leading one of this class of cases. The evidence in that case tended to show that the defendant requested K. to set fire to the barn of S., offering him a reward, and, understanding and believing K. would fire the barn, gave him a match for that purpose; but K. never intended to commit the crime. It was held that the evidence warranted a conviction.

In People v. Lawton, 56 Barb. 126, an attempt to commit burglary was sustained upon evidence showing that the defendant and

an accomplice agreed to commit the crime on a certain night; and that, in pursuance of the agreement, they went to the building they intended to burglarize, carrying tools for that purpose. Concluding that the tools were not sufficient to effect an entrance, they started for a blacksmith's shop to get a crowbar; but before they secured it they were arrested. That case was approved and followed in People v. Sullivan, 173 N. Y. 122, 65 N. E. 989, 63 L.R.A. 353, 93 Am. St. 582, which held that parties who, intending to break into a building, provide themselves with tools for that purpose and go to the building, but whose design is frustrated while they were inspecting the premises for the purpose of making an entry, commit such an overt act as to constitute an attempt to commit burglary.

In State v. Taylor, 47 Ore. 455, 84 Pac. 82, 4 L.R.A. (N.S.) 417, 8 An. Cas. 627, it was held that the paying of money to another for his assistance in committing the crime of arson, the providing the means for such purpose, and the giving of directions as to the time and manner of executing the purpose, were acts sufficient to constitute an attempt to commit the crime.

It has been held, in several states having statutes substantially like our own, and to the effect that any act done towards the commission of an intended crime, or tending to accomplish it, is an attempt to commit it, that procuring or soliciting another to commit the crime, when united with acts of necessary preparation is sufficient to warrant a conviction. See Commonwealth v. Flagg, 135 Mass. 545; Commonwealth v. Peaslee, 177 Mass. 267, 59 N. E. 55; Griffin v. State, 26 Ga. 493.

Our consideration of the adjudged cases has led us to the conclusion that no definite rule, applicable to all cases, can be laid down as to what constitutes an overt act or acts tending to accomplish a particular crime, within the meaning of our statute. Each case must depend largely upon its particular facts and the inferences which the jury may reasonably draw therefrom. It may be stated, however, as a general proposition that to constitute an attempt to commit a crime there must be an intent to commit it, followed by an overt act or acts tending, but failing, to accomplish it. The overt acts need not be such that, if not interrupted, they must result in the

commission of the crime. They must, however, be something more than mere preparation, remote from the time and place of the intended crime; but if they are not thus remote, and are done with the specific intent to commit the crime, and directly tend in some substantial degree to accomplish it, they are sufficient to warrant a conviction. .

We have attentively considered the evidence in the light of the several legal principles stated, and hold that it tends to show or prove the facts alleged in the indictment; and, if satisfactory to the jury and trial judge, sufficient to warrant his conviction. The evidence tends to show that the defendant intended to commit the crime; that he hired agents to commit it, and advised and aided them in the necessary preparation and in securing the means with which to commit it; that he, by his co-conspirators or agents, entered the building for the purpose of burning it; and, further, that the attempt failed only because his agents were interrupted by the officers of the law. The fact that the entry was made also for the purpose of blowing the safe is not a controlling factor; for the overt acts, including the entry, were done, as the evidence tends to show, as a part of one proposed proceeding, the burning of the building and, incidentally, the blowing of the safe. We accordingly answer the second question in the affirmative. It follows from this conclusion that the indictment states facts sufficient to constitute a public offense.

Ordered that this case be, and it is hereby, remanded to the district court for further proceedings.