JAMES RUSSELL DUPUY

*v.*

STATE OF TENNESSEE.

(*Jackson,* April Term, 1959.)

Opinion filed May 1, 1959.

GROVER N. MCCORMICK, Memphis, for plaintiff in error.

THOMAS E. FOX, Assistant Attorney General, for defendant in error.

BURNETT, JUSTICE, dissented.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The defendant below, James Russell Dupuy, was convicted under an indictment charging him with attempt to procure a miscarriage on a young woman named June Harris. This appeal in error resulted.

The statute under which the defendant below was indicted and upon which he stands convicted is Section 39-302 T.C.A. which reads as follows:

"39-302. Attempt to procure criminal miscarriage—Penalty.—Every person who shall administer any substance with the intention to procure the miscarriage of a woman or shall use or employ any instrument or other means with such intent, unless the same shall have been done with a view to preserve the life of such woman, shall be punished by imprisonment in the penitentiary not less than one (1) nor more than three (3) years."

The facts appearing in the record are that the defendant, Dupuy, was a druggist and pharmacist in the City of Memphis, and his business establishment was located on Linden Circle.

It seems that Dupuy had a good reputation as an individual and as a pharmacist.

The police of Memphis suspected him of violating the law as to abortion and that they anonymously heard that he was producing miscarriages.

In furtherance of the plan of the police to apprehend the defendant they selected a young woman to get in the confidence of the defendant and set up a situation to find him guilty of violating the law.

This young woman, June Harris, was selected by the officers but she was not pregnant at the time. It seems that this young woman went into the place of business of the defendant two or three times, and finally solicited his help; that the defendant finally agreed to come to her assistance and that they went to a room taking along various instruments owned by the defendant. When they got into the room the officers, who were waiting close by, came upon the defendant and arrested him.

It appears that the defendant had all of his instruments ready on the table and that the woman left the room before any attempt was made to touch her body, or it seems that the defendant never got within five feet of her. About this time the officers came upon the scene and arrested the defendant.

It will be observed that the very aim of the statute is to punish one who attempts to procure a criminal miscarriage. The essence of the offense is that it must be an attempt. A mere preparation is not sufficient.

It appears that in this case this young woman never allowed the man to touch her either with his hands or his instruments. While his conduct is very reprehensible and he would no doubt have carried out this attempt had he not been thwarted in his efforts by the arrival of the police.

It has been suggested that since the female here was not in fact pregnant that the commission of the attempt was impossible.

The State relies upon the case of *Rafferty v. State,* 91 Tenn. 655, 659, 16 S.W. 728, 729, in which the Court said:

"*Hayes v. State* (15 Lea 64) was approved and followed in the late case of *Clark v. State,* 86 Tenn. 511, 8 S.W. 145, wherein it was decided that one who feloniously opened the cash-drawer of another, believing it to contain money or other valuables, and intended to steal the same, was guilty of an attempt to commit larceny, and punishable as for a felony, though the drawer proved to be entirely empty."

The holding in the above case is a complete answer to this proposition. The intent was there and the overt act was there.

We have no such case here. While the defendant had completed his plan to do this crime the element of attempt does not appear in this record. The proof shows that he did not use any of the instruments and did not touch the body of the girl in question. Under such facts we do not think that the defendant is guilty under the statute.

We seem to have no Tennessee case directly in point. We quote the following from 14 Am.Jur. Sec. 68, page 816:

"In a general way, however, it may be said that preparation consists in devising or arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made. Even though a person actually intends to commit a crime, his procurement of the instrumentalities adapted to that end will not constitute an attempt to commit the crime in the absence of some overt act."

For example the procurement by a prisoner of tools adapted to breaking jail does not render him guilty of an attempt to break jail.

■ The over act necessary to constitute an attempt to commit crime must go beyond mere preparation, and commission of the crime must be at least apparently possible to the reasonable apprehension of accused. *State v. Addor,* 183 N.C. 687, 110 S.E. 650, 22 A.L.R. 219.

■ Preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt to the direct movement toward the commission after the preparations have been made.

See 22 C.J.S. Criminal Law sec. 75, p. 140; *People v. Anderson,* 1 Cal.2d 687, 37 P.2d 67.

It follows that we find a full preparation to do the act with the criminal intent but the overt act is wholly lacking.

It results that the judgment of the conviction must be reversed and remanded.

BURNETT, JUSTICE, dissenting.

TOMLINSON, JUSTICE (concurring).

Due to the studious dissenting opinion so ably presented, I am constrained to briefly state in simple and layman-like language why I am concurring with the majority opinion in this case.

In the beginning, I wish to correct, in so far as I am concerned, a statement in the dissenting opinion that "the majority seems to think a woman must be pregnant before a conviction can be had under the Statute" making an attempt to commit an abortion a criminal offense. I do not understand this to be the position of the majority. Certainly it is not mine.

We are not dealing here with whether Dupuy *intended* to commit an abortion. We are dealing with whether there is evidence that he *attempted* to commit that abortion.

In the numerous conferences had in this case, and as stressed in the dissenting opinion, much has been said about an *overt act,* and that if Dupuy went so far as to commit an overt act, that act amounted to an *attempt* to commit the crime. I have no quarrel with that position.

It follows, therefore, that in so far as it applies to this case, the expression "overt act" is used interchangeably with, and with the same meaning, as the word "attempt". For clarity, therefore, I will use the word "attempt", rather than the word "overt act".

If I correctly understand the dissenting opinion, and I do not believe it is capable of a different interpretation, it is that Dupuy is guilty of an attempt to commit this crime, because the jury says he is. In my opinion, the law is, and has always been, that if there is no evidence to support the jury's say, then it is the duty of the Court to set aside that say of the jury.

In support of its position, the dissenting opinion cites *Johnson v. State,* 125 Tenn. 420, 423, 143 S.W. 1134, 1137, Ann.Cas. 1913C, 261, to the effect that, in the language of the dissenting opinion, "in this State an overt act", (an attempt) "is * * * a question for the jury." This Johnson case was dealing with a homicide case in which the insistence was self defense. The question there was whether the defendant was justified in concluding that he was being approached by another with an *intent* to do him great bodily harm. If the jury so found then defendant's subsequent act was self defense. And the Court said, 125 Tenn. at page 434, 143 S.W. at page 1137, that whether the defendant was justified in believing that he was approached with such intent was a jury question. *Intent* was a very important factor in that homicide case. But here again, I call attention to the fact that in this case it is not a question of *intent.* It is a question of *attempt.*

The Johnson case refers as authority for its ruling *Jackson v. State,* 65 Tenn. 452. That also was a homi-

cide case, in which was involved the important question of *intent,* rather than *attempt,* the question with which we are concerned in this present case. In that case the Court did say, at page 461, that: "The rule that it is the province of the judge to decide if there is any evidence is, no doubt, a correct one when properly applied". That rule, of course, applies to the question of an *attempt,* as well as the question of *intent.* That is, if there is no evidence of an *attempt,* or if the evidence, as a matter of law, negatives such a conclusion, then it is the duty of the Court to so hold, regardless of the fact that the jury said it was an *attempt.* There ought to be no controversy as to the accuracy of that statement.

In the case at bar the evidence is that Dupuy and this woman got in an automobile into which he put a kit containing the instruments with which he intended to commit the abortion. They then drove to this motel. After they entered the room, Dupuy took the instruments from the kit, placed them on the bed or table and the parties engaged in conversation while each drank beer or coca cola. Then he filled his hypodermic needle, and suggested that she disrobe. Thereupon, she in effect said, by walking out of the room, that she had changed her mind about having an abortion committed on her.

The above evidence, says the jury, amounted to an attempt to commit an abortion. And the learned dissenting opinion says that it amounted to such an attempt because the jury said it did.

Let it be assumed that instead of the woman changing her intent after Dupuy had suggested that she disrobe, he, Dupuy, as she started to disrobe said to her "I have changed my mind, I am not going to perform that abor-

tion'', and walked out. Is there any one who would claim that what he did amounted to an attempt to commit an abortion, because the jury said it did? Yet, it cannot be distinguished, on principle, from the facts which did happen as stated just above. It was simply the one, rather than the other, who abandoned the mutual intent.

Or, let it be assumed that on the way out to this motel after Dupuy had put his instruments in the car, this lady had caused the automobile to be stopped and she got out with a statement that she had abandoned the intent, would Dupuy then be guilty of an attempt to commit an abortion because the jury said he was? Yet, the case here supposed is no different, on principle, from that which actually occurred from which the jury made its say which my learned Associate thereby considers binding on this Court.

If what Dupuy did amounts to an attempt, then, to use a very simple illustration, a man who puts a pistol in his pocket with the declared intention of killing a named victim and go searching for that victim but fails to shoot him because he cannot find the intended, but hiding, victim, then that man is guilty of an attempt to commit murder, because a jury said he was. This, in my opinion, is inconceivable. But it cannot, in my opinion, be distinguished from the case at bar.

In my opinion, there is no evidence to support the verdict of the jury. Hence, this Court has done no more than is required of it in setting that verdict aside.

BURNETT, JUSTICE (dissenting).

I cannot agree with the majority opinion in this case.

Dupuy was indicted and convicted under Section 39-302, T.C.A., for an "attempt to procure criminal miscarriage" * * * by the "use or employ any instrument or other means with such intent * ** to procure the miscarriage of a woman". The majority opinion reverses the conviction below because the "woman never allowed the man to touch her either with his hands or his instruments." It is thus held that the facts hereinafter to be related do not constitute an attempt.

A generally accepted definition of what constitutes an attempt to commit a crime or violate a certain statute is well stated by the Court of last resort of Virginia in *Martin v. Commonwealth,* 1954, 195 Va. 1107, 81 S.E.2d 574, 576, as follows:

"It is well settled in this jurisdiction that in criminal law an attempt is an unfinished crime, and is compounded of two elements, the intent to commit the crime and the doing of some direct act towards its consummation, but falling short of the execution of the ultimate design; that it need not be the last proximate act towards the consummation of the crime in contemplation, but is sufficient if it be an act apparently adopted to produce the result intended; mere preparation is not sufficient."

In this case the uncontroverted facts show that this man had established a reputation in Memphis or at least the police were so informed and suspected him of committing criminal abortions. He confessed to such acts when arrested. As a result of this they planted a trap for the man, had this young woman along with her alleged consort to contact the defendant. After some three or four efforts the defendant was contacted and

agreed to perform this abortion upon the payment of a certain amount of money. The parties, the woman and man, who contacted this defendant suggested that the operation take place in the hotel but the defendant demurred to this because he was afraid the police might see him and then, at his suggestion, he selected a motel where these parties met for this act to be performed. The parties, that is, the woman and the defendant who was to perform this operation, went into the room, the defendant laid out his various instruments and other things that he was to use in this including certain drugs, and prepared for the act. The woman, in an effort to stall him off in the actual doing of the operation for a few minutes until the police arrived, feigned nervousness and asked the defendant to get her a bottle of beer which he did. She drank this beer and after doing so she apparently still seemed to be nervous and he suggested another bottle of beer and just about this time the police arrived and arrested him. The defendant turned back the covers of the bed and spread a piece of cellophane over the sheet. He then took his hypodermic needle and filled it with penicillin ''and told me to take my clothes off and get ready.'' He confessed that he was doing such acts because he needed money. There is no controversy as to these facts.

It is true that the defendant did not actually touch the woman in an effort to insert the instruments in her and to perform the operation but he was there ready to do so and had given her this beer to settle her nerves and was just in the act of beginning the operation when he was arrested. This constitutes more than mere preparation. The intent which is the heart of the crime was certainly proven. The man was ready and starting to per-

form the venture. The fact that he did not do the operation was not due to any fault of his. He performed direct ineffectual acts toward the commission of the offense, and when he did this, the attempt to commit the offense was complete. Neither the ineffectuality of his acts nor the prevention of performance by the police was of a kind to rid his acts of their criminal character.

The impossibility of performing this operation was brought about by outside interference, (the police arriving) and grows out of extrenuous facts not within the knowledge and control of the accused. See 8 R.C.L., p. 280, Sec. 298.

The majority seems to think the woman must be pregnant before a conviction can be had under the Statute. The Statute originally contained such a provision. The Codifiers of the 1932 Code omitted such a requirement. The Statute now provides "to procure the miscarriage of a woman". In this situation the law is:

"A question arises under local statutes whether the defendant can be guilty of an attempt to commit an abortion when the woman was in fact not pregnant.— Thus, when a statute provides for the punishment of an attempt to procure a miscarriage of 'any woman' without stating that she must be a 'pregnant' woman, it is immaterial whether the woman was actually pregnant or not." Wharton's Criminal Law and Procedure, Vol. 2, Page 568, Sec. 748 and citing cases from many States and none to the contrary.

In this State an overt act is a fact question and a question for the jury. This Court in *Johnson v. State,* 125 Tenn. 420, 423, 143 S.W. 1134, 1137, Ann.Cas.1913C, 261, said:

"This is a question of fact, which must be left to the jury in every case. (Citing authorities.) 'Overt' simply means 'open.' In homicide cases an overt act is an open act, indicating a present purpose to do immediate great bodily harm. What this overt act is can be shown in a given case only by the evidence, and the jury must judge of it in the light of all the evidence. The court cannot properly say to them that this or that act is an overt act."

The general law on the question of an overt act and as to what constitutes is stated thus:

"No definite rule as to what constitutes an overt act, for purposes of an attempt, in particular cases can or should be laid down, but each case must depend largely on its particular facts and the inferences which the jury may reasonably draw therefrom, subject to general principles applied as nearly as can be with a view to working substantial justice." 22 C.J.S. Criminal Law sec. 75b, p. 140.

In my search of the authorities I find many and sundry attempted definitions as to what constitutes an overt act. This though applies differently to different crimes and to different cases. The best statement as to what constitutes an overt act that I have found is by the Minnesota Court in *State v. Dumas*, 118 Minn. 77, 136 N.W. 311, at page 314, 41 L.R.A.,N.S., 439, wherein that Court said:

"Our consideration of the adjudged cases has led us to the conclusion that no definite rule, applicable to all cases, can be laid down as to what constitutes an overt act or acts tending to accomplish a particular crime, within the meaning of our statute. Each case

must depend largely upon its particular facts and the inferences which the jury may reasonably draw therefrom. It may be stated, however, as a general proposition that to constitute an attempt to commit a crime there must be an intent to commit it, followed by an overt act or acts tending, but failing to accomplish it. The overt acts need not be such that, if not interrupted, they must result in the commission of the crime. They must, however, be something more than mere preparation, remote from the time and place of the intended crime; but if they are not thus remote, and are done with the specific intent to commit the crime, and directly tend to some substantial degree to accomplish it, they are sufficient to warrant a conviction.''

One Court has said very logically, I think, that the accused must take at least one step beyond preparation by doing something directly moving toward and bringing him nearer the crime he intends to commit and though the act need not be the last approximate act to the consummation of the offense intended to be perpetrated, it must be such as will apparently result in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself.

I would go along in this type of case and under the facts as presented here with the Supreme Court of Mississippi in *Stokes v. State,* 92 Miss. 415, 46 So. 627, 629, 21 L.R.A.,N.S., 898, when that Court said:

''* * * whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and commonsense ad-

ministration of the law with subleties as to what constitutes preparation and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in its worse sense.''

Thus it is that I am constrained to dissent from the majority opinion prepared herein. I would affirm because clearly under the undisputed facts which were passed on by the jury, under proper instruction (there is no complaint about the instruction), the factual situation was shown to the jury and was passed on by them and the man found guilty. Under these particular facts and the inferences which the jury may reasonably draw therefrom, the jury found acts constituting an attempt. Clearly the facts do not preponderate against his guilt and an attempt. He comes here presumed to be guilty.