**STATE of Tennessee, Plaintiff–Appellee,**

**v.**

**Tracie REEVES, Defendant–Appellant.**

Supreme Court of Tennessee,
at Jackson.

Feb. 26, 1996.

―――――

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael J. Fahey, II, Assistant Attorney General, Nashville, Guss Radford, District Attorney General, Eleanor Cahill, Assistant District Attorney General, Huntingdon, for Plaintiff–Appellee.

Raymond L. Ivey, Ivey, Parish & Johns, Huntingdon, for Defendant–Appellant.

## OPINION

DROWOTA, Judge.

The defendant, Tracie Reeves, appeals from the Court of Appeals' affirmance of the trial court's order designating her a delinquent child. The trial court's delinquency order, which was entered following a jury trial, was based on the jury's finding that the defendant had attempted to commit second degree murder—a violation of Tenn.Code Ann. § 39–12–101. The specific issue for our determination is whether the defendant's actions constitute a "substantial step," under § 39–12–101(a)(3), toward the commission of that crime. For the following reasons, we hold that they do, and therefore affirm the judgment of the Court of Appeals.

### FACTS AND PROCEDURAL HISTORY

On the evening of January 5, 1993, Tracie Reeves and Molly Coffman, both twelve years of age and students at West Carroll Middle School, spoke on the telephone and decided to kill their homeroom teacher, Janice Geiger. The girls agreed that Coffman would bring rat poison to school the following day so that it could be placed in Geiger's drink. The girls also agreed that they would thereafter steal Geiger's car and drive to the Smoky Mountains. Reeves then contacted Dean Foutch, a local high school student, informed him of the plan, and asked him to drive Geiger's car. Foutch refused this request.

On the morning of January 6, Coffman placed a packet of rat poison in her purse and boarded the school bus. During the bus ride Coffman told another student, Christy Hernandez, of the plan; Coffman also showed Hernandez the packet of rat poison. Upon their arrival at school Hernandez informed her homeroom teacher, Sherry Cockrill, of the plan. Cockrill then relayed this information to the principal of the school, Claudia Argo.

When Geiger entered her classroom that morning she observed Reeves and Coffman leaning over her desk; and when the girls noticed her, they giggled and ran back to their seats. At that time Geiger saw a purse lying next to her coffee cup on top of the desk. Shortly thereafter Argo called Coffman to the principal's office. Rat poison was found in Coffman's purse and it was turned over to a Sheriff's Department investigator. Both Reeves and Coffman gave written statements to the investigator concerning their plan to poison Geiger and steal her car.

Reeves and Coffman were found to be delinquent by the Carroll County Juvenile Court, and both appealed from that ruling to the Carroll County Circuit Court. After a jury found that the girls attempted to commit second degree murder in violation of Tenn.Code Ann. § 39–12–101, the "criminal attempt" statute, the trial court affirmed the juvenile court's order and sentenced the girls to the Department of Youth Development for an indefinite period. Reeves appealed from this judgment to the Court of Appeals, which affirmed the judgment of the trial court. Reeves then applied to this Court for permission to appeal pursuant to Tenn.R.App.P. 11. Because we have not addressed the law of criminal attempt since the comprehensive reform of our criminal law undertaken by the legislature in 1989, we granted that application.

### Prior and Current Law of Criminal Attempt

Before the passage of the reform legislation in 1989, the law of criminal attempt,

though sanctioned by various statutes, was judicially defined. In order to submit an issue of criminal attempt to the jury, the State was required to present legally sufficient evidence of: (1) an intent to commit a specific crime; (2) an overt act toward the commission of that crime; and (3) a failure to consummate the crime. *Bandy v. State,* 575 S.W.2d 278, 281 (Tenn.1979); *Gervin v. State,* 212 Tenn. 653, 371 S.W.2d 449, 451 (1963); *Dupuy v. State,* 204 Tenn. 624, 325 S.W.2d 238, 240 (1959).

Of the elements of criminal attempt, the second, the "overt act" requirement, was by far the most problematic. By attempting to draw a sharp distinction between "mere preparation" to commit a criminal act, which did not constitute the required overt act, and a "direct movement toward the commission after the preparations had been made," *Dupuy,* 325 S.W.2d at 239, 240, which did, Tennessee courts construed the term "overt act" very narrowly. The best example of this extremely narrow construction occurred in *Dupuy.* In that case, the Memphis police sought to lay a trap for a pharmacist suspected of performing illegal abortions by sending a young woman to request these services from him. After the woman had made several attempts to secure his services, he finally agreed to perform the abortion. The pharmacist transported the young woman to a hotel room, laid out his instruments in preparation for the procedure, and asked the woman to remove her clothes. At that point the police came into the room and arrested the pharmacist, who then admitted that he had performed abortions in the past. The defendant was convicted under a statute that made it illegal to procure a miscarriage, and he appealed to this Court.

A majority of this Court reversed the conviction. After admitting that the defendant's "reprehensible" course of conduct would doubtlessly have resulted in the commission of the crime "had he not been thwarted in his efforts by the arrival of the police," *Dupuy,* 325 S.W.2d at 239, the majority concluded that:

> While the defendant had completed his plan to do this crime the element of at-

tempt [overt act] does not appear in this record. The proof shows that he did not use any of the instruments and did not touch the body of the girl in question. Under such facts we do not think that the defendant is guilty under the statute.

*Dupuy,* 325 S.W.2d at 240.

To support its holding, the *Dupuy* court quoted a treatise passage concerning actions that constituted "mere preparation," as opposed to actions that would satisfy the overt act requirement:

> In a general way, however, it may be said that preparation consists in devising or arranging the means or measures necessary for the commission of the offense and that the attempt [overt act] is the direct movement toward the commission after the preparations are made. Even though a person actually intends to commit a crime, his procurement of the instrumentalities adapted to that end will not constitute an attempt to commit the crime in the absence of some overt act.

*Id.* (quoting 14 Am.Jur. § 68 (1940)). To further illustrate the foregoing principle the majority provided the following example: "the procurement by a prisoner of tools adapted to breaking jail does not render him guilty of an attempt to break jail." *Id.*

As indicated above, the sharp differentiation in *Dupuy* between "mere preparation" and "overt act," or the "act itself," was characteristic of the pre–1989 attempt law. *See e.g., Gervin v. State,* 212 Tenn. 653, 371 S.W.2d 449 (1963) (criminal solicitation does not constitute an attempt); *McEwing v. State,* 134 Tenn. 649, 185 S.W. 688 (1915) (conviction for attempted rape affirmed because defendant actually laid hands on the victim). In 1989, however, the legislature enacted a general criminal attempt statute, Tenn.Code Ann. § 39–12–101, as part of its comprehensive overhaul of Tennessee's criminal law. In that statute, the legislature did not simply codify the judicially-created elements of the crime, but utilized language that had up to then been entirely foreign to Tennessee attempt law. Section 39–12–101 provides, in pertinent part, as follows:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believe them to be, *and the conduct constitutes a substantial step toward the commission of the offense.*

(b) Conduct does not constitute a *substantial step* under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

(emphasis added.)

### *The Substantial Step Issue*

As stated above, our task is to determine whether the defendant's actions in this case constitute a "substantial step" toward the commission of second degree murder under the new statute. The "substantial step" issue has not yet been addressed by a Tennessee court in a published opinion, and the question is made more difficult by the fact that the legislature declined to set forth any definition of the term, preferring instead to "leave the issue of what constitutes a substantial step [to the courts] for determination in each particular case." § 39–12–101, *Comments of Sentencing Commission.*

In addressing this issue, we first note that the legislature, in enacting § 39–12–101, clearly looked to the criminal attempt section set forth in the Model Penal Code. That section provides, in pertinent part, as follows:

(1) Definition of attempt. A person is guilty of an attempt to commit a crime if,

acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result, without further conduct on his part; or

(c) purposely does or omits to do anything which, under the circumstances as he believes them to be, is a *substantial step in a course of conduct planned to culminate in his commission of the crime*

Model Penal Code, Section 5.01 (emphasis added.)

The State argues that the striking similarity of Tenn.Code Ann. § 39–12–101 and the Model Penal Code evidences the legislature's intention to abandon the old law of criminal attempt and instead adopt the Model Penal Code approach. The State then avers that the model code contains examples of conduct which, if proven, would entitle, but not require, the jury to find that the defendant had taken a "substantial step;" and that two of these examples are applicable to this case. The section of the model code relied upon by the State, § 5.01(2), provides, in pertinent part, as follows:

(2) Conduct which may be held substantial step under paragraph (1)(c). Conduct shall not be held to constitute a substantial step under paragraph (1)(c) of this Section unless it is strongly corroborative of the actor's criminal purpose. Without negativing the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law:

. . . . .

(e) *possession of materials to be employed in the commission of the crime,*

*which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances;*

*(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;*

. . . . .

(emphasis added.)

The State concludes that because the issue of whether the defendant's conduct constitutes a substantial step may be a jury question under the model code, the jury was justified in finding her guilty of attempting to commit second degree murder.

The defendant counters by arguing that despite the similarity of Tenn.Code Ann. § 39–12–101 and the Model Penal Code's attempt provision, the legislature intended to retain the sharp distinction between "mere preparation" and the "act itself" characteristic of such decisions as *Dupuy*. She supports this assertion by pointing out that although the legislature could have easily included the examples set forth in § 5.01(2) of the model code, the Tennessee statute does not include the examples. The defendant concludes that the new statute did not substantially change Tennessee attempt law, and that her conviction must be reversed because her actions constitute "mere preparation" under *Dupuy*.

■ Initially, we cannot accept the argument that the legislature intended to explicit-

ly adopt the Model Penal Code approach, including the examples set forth in § 5.01(2). Although § 39–12–101 is obviously based on the model code, we agree with the defendant that the legislature could have, if it had so desired, simply included the specific examples in the Tennessee statute. That it did not do so prohibits us from concluding that the legislature explicitly intended to adopt the model code approach in all its particulars.

This conclusion does not mean, however, that the legislature intended to retain the distinction between "mere preparation" and the "act itself." Moreover, while we concede that a strong argument can be made that the conviction conflicts with *Dupuy* because the defendant did not place the poison in the cup, but simply brought it to the crime scene, we also are well aware that the *Dupuy* approach to attempt law has been consistently and effectively criticized. One persistent criticism of the endeavor to separate "mere preparation" from the "act itself" is that the question is ultimately not one of kind but of degree;[1] the "act itself" is merely one of the termini on a continuum of criminal activity. Therefore, distinguishing between "mere preparation" and the "act itself" in a principled manner is a difficult, if not impossible, task.[2] *See U.S. v. Dworken*, 855 F.2d 12, 19 (1st Cir.1988); *U.S. v. Brown*, 604 F.2d 347, 350 (5th Cir.1979); Levenbook, *Prohibiting Attempts and Preparations*, 49 U.M.K.C.L.Rev. 41 (1980); Hall, *Criminal Attempt—A Study of Foundations of Criminal Liability*, 40 Yale L.J. 789, 821–22 (1940). The other principal ground of criticism of the *Dupuy* approach bears directly on the primary objective of the law—that of preventing inchoate crimes from becoming full-blown ones. Many courts and commen-

---

**1.** Judge Holmes noted this point by stating: "Preparation is not an attempt. But some preparations may amount to an attempt. *It is a question of degree.*" *Commonwealth v. Peaslee*, 177 Mass. 267, 272, 59 N.E. 55, 56 (1901) (emphasis added).

**2.** This conclusion was drawn long ago by Judge Learned Hand, who stated that "the decisions [addressing when preparation has become attempt] are too numerous to cite, and would not

be much help anyway, for there is, and obviously can be, no definite line." *U.S. v. Coplon*, 185 F.2d 629, 633 (2d Cir.1950). Interestingly, Judge Hand also rejected the defendant's argument that no attempt responsibility attached until the moment of consummation of the criminal act, stating that "[t]o divide 'attempt' from 'preparation' by the very instant of consummation would be to revert to the old [rejected English] doctrine." *Id.*

tators have argued that failing to attach criminal responsibility to the actor—and therefore prohibiting law enforcement officers from taking action—until the actor is on the brink of consummating the crime endangers the public and undermines the preventative goal of attempt law. *See People v. Terrell*, 99 Ill.2d 427, 77 Ill.Dec. 88, 92, 459 N.E.2d 1337, 1341 (1984); *U.S. v. Prichard*, 781 F.2d 179, 182 (10th Cir.1986); *U.S. v. Stallworth*, 543 F.2d 1038, 1040 (2d Cir.1976). *See generally* Wechsler, Jones & Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy*, 61 Colum.L.Rev. 571, 586–611 (1961).

■ The shortcomings of the *Dupuy* rule with respect to the goal of prevention are particularly evident in this case. As stated above, it is likely that under *Dupuy* no criminal responsibility would have attached unless the poison had actually been placed in the teacher's cup. This rigid requirement, however, severely undercuts the objective of prevention because of the surreptitious nature of the act of poisoning. Once a person secretly places a toxic substance into a container from which another person is likely to eat or drink, the damage is done. Here, if it had not been for the intervention of the teacher, she could have been rendered powerless to protect herself from harm.

■ After carefully weighing considerations of *stare decisis* against the persuasive criticisms of the *Dupuy* rule, we conclude that this artificial and potentially harmful rule must be abandoned. We hold that when an actor possesses materials to be used in the commission of a crime, at or near the scene of the crime, and where the possession of those materials can serve no lawful purpose of the actor under the circumstances, the jury is entitled, but not required, to find that the actor has taken a "substantial step" toward the commission of the crime if such action is strongly corroborative of the actor's overall criminal purpose.[3] For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

ANDERSON, C.J., and REID and WHITE, JJ., concur.

BIRCH, J., files separate concurring and dissenting opinion.

BIRCH, Justice, concurring and dissenting.

I concur in the majority's statement of the rule to be applied in deciding whether a criminal attempt has occurred. I dissent, however, from their application of that rule to this case.

The applicable standard of review for this case is "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ("[T]he relevant question [in reviewing the sufficiency of the evidence] is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Applying this standard of review, I would find that under the test adopted by the

---

3. This decision is limited to the facts of this case; we do not specifically adopt any of the examples set forth in § 5.01(2) of the Model Penal Code, but simply agree with the reasoning underlying subsections (e) and (f). However, we do note that several courts charged with the responsibility of defining "substantial step" have adopted or applied the examples in the Model Penal Code. *See State v. Walters*, 311 Or. 80, 804 P.2d 1164, 1167 (1991); *Young v. State*, 303 Md. 298, 493 A.2d 352, 358–59 (1985); *Commonwealth v. Prather*, 690 S.W.2d 396, 397 (Ky.1985); *State v. Pearson*, 680 P.2d 406, 408 (Utah 1984); *State v. Latraverse*, 443 A.2d 890, 894–95 (R.I.1982); *State v. Workman*, 90 Wash.2d 443, 584 P.2d 382, 387 (1978); *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059, 1063 (1976); *U.S. v. Dworken*, 855 F.2d 12, 19–20 (1st Cir.1988); *U.S. v. Prichard*, 781 F.2d 179, 181–82 (10th Cir.1986); *U.S. v. McFadden*, 739 F.2d 149, 152 (4th Cir.1984); *U.S. v. Joyce*, 693 F.2d 838, 841 (8th Cir.1982); *U.S. v. Mandujano*, 499 F.2d 370, 376–77 (5th Cir.1974).

majority for determining whether a "substantial step" was taken, the evidence in this case is insufficient as a matter of law.

Tenn.Code Ann. § 39–12–101, the criminal attempt statute, states, in pertinent part:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

. . . . .

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's *entire* course of action is corroborative of the intent to commit the offense.

(Emphasis added). Based upon this record, I would find that the "*entire* course of action" of these two twelve-year-old girls was not "strongly corroborative" of intent to commit second-degree murder and that the evidence was insufficient as a matter of law. In looking at the "entire course of action," we should remember that these were twelve-year-old girls, not explosive-toting terrorists.

Accordingly, while I concur in the majority's abandonment of the rule stated in *Dupuy v. State*, 204 Tenn. 624, 325 S.W.2d 238 (1959), I dissent from the conclusion of the majority in this case.