IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2016

## STATE OF TENNESSEE v. GEORGE WASHINGTON MATTHEWS

**Appeal from the Circuit Court for Lake County**
**No. 13-CR-9837      R. Lee Moore, Jr., Judge**
_____

**No. W2015-02500-CCA-R3-CD  -  Filed January 24, 2017**
_____


The defendant, George Washington Matthews, was indicted for one count of possession of over one-half ounce of marijuana with intent to sell or deliver and two counts of attempting to introduce contraband into a penal facility.  After trial, a jury found the defendant guilty on all counts.  The defendant received a total effective sentence of twelve years.  On appeal, the defendant argues the evidence was insufficient to support his convictions; the trial court erred when it allowed testimony regarding the defendant's recent incarceration; and his indictment was defective.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Hal J. Boyd, Tiptonville, Tennessee, for the appellant, George Washington Matthews.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Phil Bivens, District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Just after midnight in the early morning hours of February 17, 2013, Deputy Thomas Hollowell was patrolling Proctor City Road on the eastern boundary of the Northwest Correctional Center ("the prison") in Lake County, Tennessee.  According to Deputy Hollowell, this road and a nearby field are known avenues for smuggling contraband into the prison.  Due to the contraband problem, Deputy Hollowell frequently patrolled the area.  During his patrol that morning, Deputy Hollowell discovered the

defendant and another individual lying in a ditch alongside Proctor City Road. The ditch is located approximately 100 to 150 yards from the eastern boundary of the prison. If followed, the ditch leads to the prison greenhouse and firing range. Deputy Hollowell knew from personal experience that the firing range was a "hotspot" for smuggling contraband into the prison facility.

After spotting the defendant and his co-defendant, Deputy Hollowell stopped and exited his vehicle. Deputy Hollowell also noticed two large duffel bags lying in the ditch approximately one to two feet from the defendant. After detaining the defendant and the co-defendant, Deputy Hollowell inspected the duffel bags and discovered they contained forty-four individually packaged one-pound bags of tobacco; twenty-three cell phones with batteries and chargers; and approximately 390 grams of marijuana in thirteen individual packages. Deputy Hollowell did not see the defendant or his co-defendant carrying or handling the duffel bags. At trial, Deputy Hollowell testified there were no fingerprints or other physical evidence on the bags or their contents. He also acknowledged there were no receipts linking the defendants to the cell phones found inside the two duffel bags. Deputy Hollowell testified that Northwest Correctional Center is a penal institution where prisoners are quartered.

Brock Sain, a special agent for the Tennessee Bureau of Investigation, testified as an expert witness for the State. As a special agent and forensic scientist, his duties include testing and identifying controlled substances brought to the laboratory by law enforcement. Agent Sain was tasked with identifying the packages of plant material found in the defendant's duffel bags by Deputy Hollowell. Upon visual inspection, Agent Sain identified the plant material in the packages as marijuana. Agent Sain removed and unwrapped one of the individual packages and weighed it. The weight of the plant material from that package, without the wrapper, was approximately twenty-nine grams. Agent Sain explained there are approximately twenty-eight grams in an ounce, and approximately fourteen grams in one-half ounce. Agent Sain also weighed the other packages together. The total weight of the packages was approximately 390 grams, or fourteen ounces. Using a sample of the material, Agent Sain conducted a microscopic and modified Duquenois-Levine color test. Both tests confirmed the plant material was in fact marijuana. He then prepared a report of his findings, which was entered into evidence at trial.

Lieutenant David Ables, an investigator at the prison, testified the prison is a penal facility where approximately 2400 inmates are housed. The prison has a history of problems with contraband; the biggest contraband problems being illegal drugs, cell phones, and tobacco. The prison consists of some areas that are enclosed behind walls and razor wire and other areas that are simply behind a fence. Inmates who earn a lower security classification are allowed to go outside the prison walls and perform

maintenance on the prison grounds. Lieutenant Ables explained the Proctor City Road area, where the defendant was found, is a well-known drop site for smuggling illegal contraband into the prison. The portion of the ditch where Deputy Hollowell located the defendant is not accessible to inmates. Someone attempting to smuggle contraband into the prison would need to get closer to the prison property before inmates would actually be able to access the contraband. Lieutenant Ables explained that other popular drop spots for contraband include the prison greenhouse and firing range. The defendant was found about one half to three quarters of a mile away from the prison's greenhouse and firing range. There is also an area about 200 yards from where the defendant was found, near a "No Trespassing" sign, which is also accessible to inmates. Finally, Lieutenant Ables stated the defendant had been an inmate of the prison and was released approximately two weeks prior to this incident.

Lieutenant Joseph Vernon of the Lake County Sheriff's Office testified there had been a number of contraband arrests made in the Proctor City Road area. On February 17, 2013, Lieutenant Vernon received a phone call from Deputy Hollowell informing him that he had arrested two individuals with two large duffel bags containing contraband. Based on his extensive career in law enforcement, including twenty-two years with the Department of Correction, Lieutenant Vernon was familiar with the street value of marijuana, as well as its value inside prison facilities. He explained thirteen to fourteen ounces of marijuana, depending on the quality, would be worth at least between $1300 and $1400 on the street. That same amount of marijuana, depending on the prevalence of marijuana within the specific facility, would be worth at least $20,000 or more inside a prison. Cell phones were also a very valuable commodity in most prisons. Lieutenant Vernon testified he knew of instances where inmates paid more than $500 dollars to have a cell phone smuggled into prison. Lieutenant Vernon testified he worked at Northwest Correctional Center for fifteen years before moving to internal affairs. He knew the area along Proctor City Road where the defendant was found. He confirmed it is a popular location for smuggling contraband into the prison.

The State rested its case after calling Deputy Hollowell, Special Agent Sain, Lieutenant Ables, and Lieutenant Vernon. Following a jury-out hearing, the defense rested without presenting any proof. The jury found the defendant guilty of the following: possession of marijuana over one-half ounce with intent to sell or deliver (Count 1); attempt to introduce contraband, marijuana, into a penal institution (Count 2); and attempt to introduce contraband, cell phones, into a penal institution (Count 3). On March 26, 2015, the trial court sentenced the defendant to six years under Count 1, twelve years under Count 2, and eleven months and twenty-nine days under Count 3. The trial court ordered all sentences to run concurrently, for a total effective sentence of twelve years.

On April 22, 2015, the defendant filed a timely motion for new trial alleging the evidence was insufficient to support his convictions, numerous errors on the part of the trial court, and deficiencies in the indictments and jury verdict. On November 23, 2013, the trial court heard argument on the defendant's motion for new trial. The trial court denied the defendant's motion, and this timely appeal followed. On appeal, the defendant argues: the evidence presented at trial is insufficient to support his convictions; the trial court erred in allowing testimony regarding the defendant's incarceration at Northwest Correctional Complex; the trial court erred in excluding statements made by the defendant at the time of arrest; and the indictments in Count 1 and Count 2 are defective. The State argues the evidence is sufficient to support the defendant's convictions, the trial court did not err by allowing testimony regarding the defendant's recent incarceration, and the indictments are not defective. Following a thorough review of the record and briefs, we affirm the judgments of the trial court.

*Analysis*

## I.  Sufficiency of The Evidence

When a defendant challenges the sufficiency of the evidence on appeal, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Papas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witness face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a

convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). The extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Id.* This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

The defendant argues the evidence was insufficient to convict him of possession of a controlled substance, marijuana, with intent to sell or deliver, because there was no evidence that the defendant physically handled the duffel bags or that he had the power and intention to exercise dominion and control over the drugs. He also argues the evidence was insufficient to support his convictions for attempting to introduce contraband into a penal facility. Specifically, he argues there was no evidence he possessed the duffel bags and, therefore, acting with the kind of culpability necessary to commit the completed crime, and there was no evidence of acts in furtherance of the attempted crime. After viewing the evidence in the light most favorable to the State, we disagree with the defendant.

### A. Count One – Possession of A Controlled Substance, Marijuana, With Intent to Sell or Deliver.

It is an offense for a defendant to knowingly possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance. Tenn. Code Ann. § 39-17-417(a)(4). A violation of Tennessee Code Annotated section 39-17-417(a)(4) involving more than one-half ounce but less than ten pounds of marijuana is punishable as a Class E felony. Tenn. Code Ann. § 39-17-417(g)(1). "Before a defendant may be convicted of possessing a controlled substance with intent to manufacture, distribute, or

sell, the State must prove beyond a reasonable doubt the substance was a controlled substance and the defendant possessed the substance with the intent to manufacture, deliver or sell the substance." *State v. Cooper,* 736 S.W.2d 125, 128 (Tenn. Crim. App. 1987). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substances were possessed with the purpose of selling or otherwise dispensing." *Id.*

The act of possession may be actual or constructive. *Id.* at 129. "In order for a person to 'constructively possess' a drug, that person must have the 'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Id.* (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). In other words, "constructive possession is the ability to reduce an object to actual possession." *Id.* Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013); *see also* Tenn. Code Ann. § 39-17-419 (stating that possession may be inferred from "relevant facts surrounding the arrest"). However, the presence of a person in an area where drugs are found is not, by itself, sufficient to support of finding of constructive possession. *Id.*

When viewing the facts in the light most favorable to the State, the evidence sufficiently supports the defendant's conviction for possession of marijuana with intent to sell or deliver. The proof at trial revealed the defendant and his codefendant were discovered lying in a ditch on the side of the road, just after midnight, on a cold February morning. Proctor City Road, the road where Deputy Hollowell found the defendant, is a rural road adjacent to a prison. The area is well known by prison officials and law enforcement as a "hotspot" for smuggling illegal contraband. The ditch where the defendant was hiding leads directly to the prison garden and firing range, areas also known to be "hotspots" for contraband. Two large duffel bags containing cell phones, cell phone charges, forty-four pounds of tobacco, and a leafy material later determined by Agent Sain to be 390 grams of marijuana valued at approximately $30,000 were found one to two feet from the defendant.

The facts in this case show more than mere presence at a location where drugs were found. *See State v. Bigsby*, 40 S.W.3d 87, 91 (Tenn. Crim. App. 2000) (finding each case to be fact specific, so the defendant's presence in a location where narcotics are sold in addition to other incriminating facts can be sufficient to establish criminal liability). Based on this evidence, a jury could rationally conclude the defendant possessed marijuana with the intent to deliver or sell it. The defendant is not entitled to relief on this issue.

**B. Counts Two and Three – Attempt to Introduce Contraband Into A Penal Facility**

Tennessee Code Annotated section 39-16-201 (b)(1) and (3) provides:

(b) It is unlawful for any person to:
(1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any . . . controlled substances or controlled substance analogues . . .
(3) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any telecommunication device.

Tenn. Code Ann. § 39-16-201 (b)(1), (3). Telecommunication device is defined under the statute to include cellular phones. Tenn. Code Ann. § 39-16-201 (a).

Criminal attempt occurs when a person:

 [a]cts with the intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

 Tenn. Code Ann. § 39-12-101 (a)(3). Therefore, "a defendant who acts with the required culpable mental state 'may be convicted of criminal attempt based on conduct constituting a substantial step toward the commission of the offense.'" *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *State v. Richardson*, 251 S.W.3d 438, 443 (Tenn. 2008)). Our Supreme Court has held:

[W]hen an actor possesses materials to be used in the commission of a crime, at or near the scene of the crime, and where the possession of those materials can serve no lawful purpose of the actor under the circumstances, the jury is entitled, but not required, to find that the actor has taken a "substantial step" toward the commission of the crime if such action is strongly corroborative of the actor's overall criminal purpose.

*State v. Reeves*, 916 S.W.2d 909, 914 (Tenn. 1996).

As noted above, the defendant was found lying in a ditch on the side of a road within feet of two large duffel bags filled with illegal contraband. The ditch where Deputy Hollowell discovered the defendant is close to the eastern boundary of Northwest

Correctional Center. Deputy Hollowell found the defendant on a very cold February morning just after midnight. The prison had a history of problems with contraband being smuggled onto prison grounds. The defendant had been released from the same penal facility two weeks prior to his arrest, and the area where he was found is known to be a "hotspot" for smuggling contraband into the prison. Deputy Hollowell and Lieutenant Ables both testified that the prison was a penal facility that housed around 2400 inmates.

Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to support the defendant's conviction for attempt to introduce contraband into a penal facility. Again, the defendant is not entitled to relief on this issue.

## II. Prior Incarceration of the Defendant

The defendant argues the trial court erred by allowing Lieutenant Ables to testify that the defendant had been incarcerated at Northwest Correctional Center and released approximately two weeks prior to his arrest on Proctor City Road. The defendant contends Lieutenant Ables' testimony was equivalent to evidence of a prior crime or bad act and should have been excluded under Tennessee Rule of Evidence 404(b). The State responds that the defendant's recent incarceration was relevant to the defendant's intent to introduce contraband into a correctional facility, so the trial court properly allowed the testimony. We agree the trial court did not abuse its discretion in allowing the testimony.

Tennessee Rule of Evidence 404(b) generally prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity with the character trait." *State v. Jones*, 450 S.W.3d 866, 891 (Tenn. 2014). Rule 404(b) allows such evidence in limited circumstances for purposes other than proving action in conformity with a character trait. *Id.* The rule sets out certain procedural requirements the trial court must follow:

(1) The court upon request must hold a hearing outside the jury's presence;
(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b)(1)-(4). The comments to Rule 404(b) provide that evidence of other crimes, wrongs, or acts should be excluded unless relevant to an issue other than the

character of the defendant, such as identity, motive, intent, or absence of mistake. *Jones*, 450 S.W.3d at 891 *see also* Tenn. R. Evid. 404, Advisory Commission cmt.

Trial courts are encouraged to take a "restrictive approach [to] [Rule] 404(b) . . . because 'other act' evidence caries a significant potential for unfairly influencing a jury." *State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008). In *Dotson*, our Supreme Court explained the policy in favor of exclusion:

> The rationale behind the general rule is that admission of other wrongs carries with it the inherent risk of the jury convicting a defendant of a crime based upon his or her bad character or propensity to commit a crime, rather than the strength of the proof of guilt on the specific charge . . . As this Court has consistently cautioned, the jury should not "be tempted to convict based upon a defendant's propensity to commit crimes rather than . . . evidence relating to the charged offense."

*Id.* Provided the trial court substantially complied with the procedure of Rule 404(b), the trial court's decision to admit or exclude evidence will not be overturned on appeal absent an abuse of discretion. *Jones*, 450 S.W.3d at 891. However, if the trial court failed to substantially comply with the strict procedural requirements of Rule 404(b), no deference is given to the trial court's decision to admit or exclude evidence. *State v. Dubose,* 953 S.W.2d 649, 652 (Tenn. 1997). Where the trial court fails to follow the procedural requirements of Rule 404(b), this Court will determine admissibility based on the evidence presented at the jury out hearing. *Id.*

In this case, prior to trial the defendant filed a motion in limine requesting the trial court to exclude any reference to his prior incarceration at Northwest Correctional Center or his prior convictions, and following a hearing, the trial court granted the motion.[1] In its Order Granting Motion in Limine, the trial court ruled:

> This cause came to be heard on February 24, 2014, upon the motion of the [d]efendant, George Washington Matthews, for an order prohibiting the State's use of prior criminal acts to show that the [d]efendant had been incarcerated at the Northwest Tennessee Correctional Complex, or to show the [d]efendant's bad character or propensity to commit a crime. After consideration of the motion and the statements of counsel, the Motion was

---

[1] The parties failed to include a transcript from the February 24, 2014, hearing in the record, so the precise arguments of the parties and the statements of the trial court are unknown. While it would have been helpful for the transcript to have been included with the record, it was not necessary for the purpose of this Court's ruling.

granted, as the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the [d]efendant's Motion in Limine to Exclude Evidence of Defendant's Prior Criminal History to Show Confinement is GRANTED.

Prior to opening statements, the State re-raised the defendant's motion in limine and asked for clarification of the trial court's order, stating:

[The defendant] early on filed a motion to keep out the – as I understood the motion – to prohibit the State from referring to [the defendant's] prior criminal history, he's a Career Offender, as a way of showing that [the defendant] had been an inmate at Northwest Corrections. And the way I read the order was that I couldn't do that. But I did not read – I don't remember that being discussed that there wasn't any way we could introduce the fact that he had been an inmate at Northwest only fifteen days before this happened.

And I do intend to introduce that testimony if the Court will allow it because I believe it's incredibly relevant to why he was there that night – that morning. And there are cases and it is – it is somewhat prejudicial, all evidence is prejudicial. If it's not it's not relevant. But in order to exclude it you would have to find that the prejudice substantially outweighs the relevance.

In response, the defendant argued that if the State calls a witness to testify regarding the defendant's prior incarceration, it will be necessary to lay a foundation regarding the defendant's prison stay. The defendant cautioned that the State may attempt to introduce evidence regarding the defendant's familiarity with how contraband is moved in and out of the prison, and his administrative record may become an issue. Further, the testimony would implicate the reason for the defendant's incarceration and the length of his incarceration. According to the defendant, at that point, the evidence would become unfairly prejudicial.

The trial court then ruled:

All right, gentleman, I think that is certainly relevant, a relevant issue and it may have some, be prejudicial in a way, but its probative value certainly outweighs the prejudicial effect. Now, there's some limitations on what you're gonna do now[.]

. . .

> [Y]ou can ask [Lieutenant Ables] if [he] can identify George Washington Matthews but then you – then you simply will ask him if he was an inmate at . . . a particular time and when he was discharged.

The State complied with the trial court's order.  With respect to the defendant's prior incarceration, the State asked only, "Do you have personal knowledge of whether the defendant, the gentleman seated over here, Mr. George Washington Matthews, was an inmate shortly before February 17 of 2013 at the Northwest Correctional Facility?" Lieutenant Ables responded, "He was released from Northwest on February 2nd, 2013." The parties did not present any evidence as to the reason for the defendant's prior incarceration or the length of his prior incarceration.

Here, the trial court substantially complied with the requirements of Rule 404(b). The trial court held a hearing on the defendant's motion in limine prior to trial and ruled that the State could not use the defendant's criminal record and prior incarceration to show the defendant's bad character or propensity to commit crime.  Outside the presence of the jury, the State later asked for clarification as to whether it could ask Lieutenant Ables if the defendant had been released from the prison shortly before his arrest in this case.  After considering the arguments of the parties and the potential testimony of Lieutenant Ables, the trial court found the potential testimony to be relevant and balanced the probative value of the testimony against its prejudicial effect.  The trial court ruled that with limitation the probative value of the evidence outweighs its prejudicial effect and allowed the State to ask about the defendant's prior incarceration and date of release but not the reason for and length of the defendant's incarceration.  The defendant conceded he had been a prior inmate at the prison and was released merely fifteen days prior to his arrest, so it was not necessary for the trial court to find clear and convincing proof of this.  While the trial court could have better articulated the material issue other than conduct conforming to the defendant's propensity towards criminal behavior, the record shows the trial court substantially complied with the requirements of Rule 404(b), and we review the trial court's admission of Lieutenant Ables' testimony for an abuse of discretion.

At trial, the State had to prove beyond a reasonable doubt that the defendant intended to knowingly take the duffel bags containing contraband into the prison and took a substantial step towards doing so.  The defendant contested the element of intent at trial and instead took the position he and his codefendant happened to lie down in the ditch on Proctor City Road in the same spot the two duffel bags of contraband were located, but the bags did not belong to them.  The trial court prohibited the State from presenting evidence of the defendant's criminal history and most recent incarceration as

propensity evidence, and instead allowed limited testimony regarding the defendant's release from the prison merely fifteen days prior to his attempt to sneak contraband into the prison. This evidence was relevant to the jury's consideration of the defendant's intent. The trial court had a reason to admit Lieutenant Ables' limited testimony other than to show propensity. Further, the trial court carefully limited the testimony to be offered, and the jury did not know the reason for the defendant's incarceration, the length of the defendant's incarceration, or anything about the defendant's behavior while incarcerated. The trial court did not err in permitting Lieutenant Ables' testimony regarding the defendant's prior incarceration. *See State v. March*, 497 S.W.3d 52, 81 (Tenn. Ct. Crim. 2010). Moreover, any shortcomings in the details of the trial court's ruling are harmless due to the overwhelming evidence of the defendant's guilty. The defendant is not entitled to relief on this issue.

### III.   The Indictments

### 1.  Count One – Possession With Intent to Sell or Deliver A Controlled Substance, Marijuana.

The defendant argues his indictment for possession with intent to sell or deliver marijuana included a charge for two offenses, sale and delivery, in a single count, thereby depriving him of a unanimous verdict. The State contends the indictment charges only one offense, "possession with the intent" to sell or deliver. We agree with the State.

Tennessee Code Annotated section 39-17-417 sets forth four distinct criminal offenses: (1) manufacturing a controlled substance, (2) delivering a controlled substance, (3) selling a controlled substance, and (4) possessing a controlled substance with the intent to manufacture, deliver, or sell it. Tenn. Code Ann. § 39-17-417(a)(1)-(4); *see also State v. Greg Harris*, No. E2003-02834-CCA-R3-CD, 2005 WL 419082 at *11 (Tenn. Crim. App. Feb. 23, 2005) (noting "the legislature intended the manufacture, delivery, sale, and possession of controlled substances to be separate substantive offenses."). Count One of the indictment charged that the defendant "knowingly, unlawfully, and feloniously did possess with intent to sell or deliver a controlled substance, namely, Marijuana, in an amount in excess of 1/2 ounce," an offense codified under Tennessee Code Annotated section 39-17-417(a)(4). Possession of a controlled substance with intent to sell or deliver is a single, independent offense with its own subpart, so it is properly charged in a single count. *See* Tenn. Code Ann. § 39-17-417(a)(4); *see also Ricardo Davidson v. Chapman*, No. M2014-00565-CCA-R3-HC, 2014 WL 7011499 at *3 (Tenn. Crim. App. Dec. 12, 2014). Accordingly, the defendant is not entitled to relief on this issue.

## 2. Counts Two and Three – Introduction of Contraband into A Penal Facility

The defendant argues that counts two and three of his indictment were insufficient to put him on notice of the offenses charged and to protect him against double jeopardy. The State responds that the language of the indictment plainly stated the offenses the defendant was charged with and was sufficient to confer jurisdiction on the court. We agree with the State.

Pursuant to the United States Constitution and the Constitution of the State of Tennessee, "an indictment must provide the accused with the 'nature and cause of the accusation' being made against him/her." *State v. Smith*, 492 S.W.3d 224, 239 (Tenn. 2016) (citing U.S. Const. amend. VI; Tenn. Const. art. I, § 9). "An indictment must present facts in such a way that 'enable[s] a person of common understanding to know what is intended.'" *Smith*, 492 S.W.3d at 239; *see* Tenn. Code Ann. § 40-13-202. Our Supreme Court has held that "an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991). "[A]n indictment meets statutory and constitutional requirements if it 'achieve[s] the overriding purpose of [providing] notice to the accused.'" *Smith*, 492 S.W.3d at 239 (quoting *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997)).

Count Two and Count Three of his indictment charged the defendant with attempting to violate Tennessee Code Annotated section 39-16-201, which prohibits the introduction of contraband into a penal facility. A person commits criminal attempt when acting "with the intent to complete a course of action or cause a result that would constitute the offense . . . and the conduct constitutes a substantial step toward the commission of the offense." Therefore, the State was required to prove two elements: the culpability required for the attempted crime; and an act or acts in furtherance of the completed crime. *See State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011).

The defendant's indictment states in pertinent part:

### COUNT TWO

The GRAND JURORS of LAKE COUNTY, TENNESSEE, duly empaneled and sworn upon their oath, present that GEORGE WASHINGTON MATTHEWS . . . on or about February 17, 2013, in LAKE County, Tennessee, and before the finding of this indictment, unlawfully and knowingly, with unlawful intent, did attempt to take a controlled substance, to-wit: Marijuana, a Schedule VI drug, into the

- 13 -

Northwest Correctional Complex where prisoners are quartered in violation of TCA § 39-16-201. This is a Class D Felony and is against the peace and dignity of the State of Tennessee.

## COUNT THREE

THE GRAND JURORS of LAKE COUNTY, TENNESSEE, duly empaneled and sworn upon their oath, present that GEORGE WASHINGTON MATTHEWS . . . on or about February 17, 2013, in LAKE County, Tennessee, and before the finding of this indictment, unlawfully and knowingly, with unlawful intent, did attempt to take contraband, to-wit: cell phones, into the Northwest Correctional Complex where prisoners are quartered, in violation of TCA § 39-16-201. This is a Class A Misdemeanor and is against the peace and dignity of the State of Tennessee.

While Count Two and Count Three do not reference the attempt statute, the indictment satisfies the requirements of the United States Constitution, the Tennessee Constitution, and Tennessee Code Annotated section 40-13-202. The defendant was on notice that he was charged with the knowing attempt to introduce illegal contraband into Northwest Correctional Complex. The indictment is also sufficient to place the trial court on notice that a judgment and sentence for attempted introduction of contraband into a penal facility would be proper upon conviction. Lastly, the indictment provides the defendant protection from double jeopardy by expressly stating the date and location of the offenses with particularity. Although the language used in the indictment "did attempt" is a general description, it charges a violation covered by the criminal attempt statute and was sufficient to place the defendant on notice of the accused crime, to confer jurisdiction on the trial court, and to protect the defendant against double jeopardy. *Wyatt v. State*, 24 S.W.3d 319, 325 (Tenn. 2000) (citing *Hill*, 954 S.W.2d at 727)). The defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE